**JONAS et al. v. ROBERTI et al.**

(Circuit Court of Appeals, Ninth Circuit. August 24, 1925. Rehearing Denied October 12, 1925.)

No. 4454.

1. Patents ⬤⟲328—1,180,432, claims 2 and 3, held valid and infringed.

Roberti patent, No. 1,180,432, claims 2 and 3, relating to construction of nonstretching, ventilated mattress, *held* valid and infringed.

2. Patents ⬤⟲248—Inventor not deprived of benefit of idea by another carrying forward the art.

Inventor cannot be deprived of benefit of idea, which he had disclosed to public by improvements subsequently made by another in carrying forward the art.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; William P. James, Judge.

Patent infringement by August Roberti, Jr., and another against J. H. Jonas, doing business under the firm name of J. H. Jonas and Sons, and others. From an interlocutory decree for plaintiffs (300 F. 181), defendants appeal. Affirmed.

From an interlocutory decree, adjudging the appellants to have infringed claims 2 and 3 of letters patent No. 1,180,432, issued April 25, 1916, to the appellees as joint inventors, this appeal is taken. The invention is for a nonstretching, ventilated mattress. Its object, among other things, is to dispense with tufts in mattresses, to provide tie members between the upper and lower ticks concealed within the mattress, to secure the filling against lateral displacement, and to secure ventilation. Claim 2 is as follows:

"A mattress comprising an upper tick member, a lower tick member, boxing secured to said members in such a manner as to form an inclosed tick, filling for said tick, upper tabs secured to said upper tick member, lower tabs secured to said lower tick member, said tabs projecting into said fill-ing, ties for connecting each upper tab with a corresponding lower tab, and eyelets in said tick members through which said ties may be put in place."

Claim 3 follows the language of claim 2 for the first seven lines, and then adds:

"String ties each sewn through an upper and a lower tab and knotted in such a manner as to form a closed loop connecting said upper and lower tabs, and eyelets in said tick members through which said ties may be put in place."

J. Calvin Brown, of Los Angeles, Cal., for appellants.

Frank L. A. Graham, of Los Angeles, Cal., for appellees.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The appellees were not the first to use ties attached to the upper and lower ticks of mattresses, or the first to subdivide the interior of a mattress into compartments. Before their invention, divisions had been made by strips fastened to the inner side of the upper and lower covers which were tied together after each compartment was filled, but in the prior art there was no method by which the complete operation of using and fastening the strips could be performed after the filling had been placed between the covers. The appellees were the first to do this. To the use of inner tabs stitched to the inside of the mattress covers they added an eyelet in the outside mattress covers through which they inserted a mattress needle carrying a tie cord. The process of filling the mattress pressed the tabs against the eyelets so that the needle, when inserted, passed through the tab attached to the upper and the tab attached to the lower cover. The needle was then brought back through the tabs, but at different points, and, both ends of the cord being on the outside of the initial eyelet, a knot would be tied, which, on being pulled through the eyelet, would pull the ends of the tabs into the mattress filling. Thereafter the tie cord would be cut and the cut end pushed out of view.

The appellants operated under a patent issued on June 27, 1922, to Harry J. Malerstein (letters 1,421,274), for a mattress which it is contended presents a combination so different from that of the appellees as to avoid the charge of infringement. The appellants use cross strips sewn to the inner

side of the mattress covers to which ties are fastened; the strips being stitched to the covers at each end and loose between the stitching points. They use an eyelet, placing it above the point where the strips cross, through which they insert a cord tie, but, instead of piercing the cloth strips as is done in the appellees' combination, they pass the cord on either side of the strips.

The court below found that the strips used by Malerstein performed the same function in substantially the same way as the tabs used by the appellees, that although they may be stronger by reason of their double attachment, they are, as in the appellees' patent, stitched to the covers and serve to furnish a support for the ties, and that, in the absence of eyelets, Malerstein could not have tied his strips without resorting to some of the older and more cumbersome methods known to the art, and that, in short, Malerstein's effort was to take advantage of the eyelet feature of the appellees' patent while making such change in the inner attachment of the tabs as might serve to aid his claim that there was no substantial identity. In that conclusion we agree. We are not convinced that, either by the appellees' specifications or by virtue of any disclaimers or rulings made in the Patent Office, they are limited to the precise form in which their invention is described. The use of eyelets is of course very old, but their use in mattress construction was new and meritorious, so that the appellees are protected against unimportant changes in the manner by which the advantage of their idea is obtained.

[2] The appellants rely upon the presumption which attaches to the issuance of their patent, and thereon argue that there must be a substantial difference between the two combinations. But the conclusion does not follow. The Malerstein patent may have been issued upon the ground that it discloses an improvement over the appellees' mattress sufficient to entitle Malerstein to protection in that which he added to the art. But an inventor cannot be deprived of the benefit of the idea which he has disclosed to the public by improvements subsequently made by another in carrying forward the art. Doubtless the appellants may be entitled to the protection of that which Malerstein added to the appellees' invention, that is to say, the use of cross strips attached to the tick whereby increased strength is obtained, but they have acquired no right to use the appellees' eyelet.

A defense pleaded in the answer was that the appellees surreptitiously or unjustly obtained the idea of their patent from one Joseph Avril. On December 1, 1916, about eight months after the issuance of the patent to the appellees, Avril made an application for a patent. Evidence was offered to show that Avril had made a mattress with eyelets and tabs prior to the time when the appellees invented their combination, and that the appellees had examined it. But the trial court found, and the evidence justifies the finding, that Avril's invention was subsequent in time to that of the appellees. That conclusion was influenced largely by the fact that, in the interference between the two applicants in the Patent Office, Avril in his preliminary statement placed the date of the conception of his invention at December 5, 1914, whereas the appellees alleged the date of their conception to be about October 1, 1914. There was direct testimony also to support their statement.

It is contended that the invention of the appellees was anticipated by the disclosure made by William R. Daniel in 1913, when he filed a petition for a patent, claiming in his application the construction of a mattress with strips on the inner sides of the top and bottom covers, attached in a manner similar to the process described in the appellees' patent, employing, however, in the place of an eyelet, a hole cut in the tick and opened by a "regulator," which opening, after the tying process, was "scratched" so as to close and make a plain surface without any apparent opening. The Daniel application was rejected by reference to the patent to Busche, No. 765,377, issued July 19, 1904, and his application was abandoned. There was evidence that Daniel's mattress was exhibited to the appellants before the date of their application for patent. We cannot agree with the appellants that the use of an opening thus cut or punched in the tick was equivalent to the insertion and use of a metallic eyelet. The evidence clearly indicated the disadvantages of a mattress made after the Daniel process, in that the hole so made in the thick would close up and prevent ventilation, that if it closed entirely it would not suggest an opening to an operator who might be called upon to renovate the same, nor reveal the inner structure of the mattress, and that, if it did not close up entirely, it would present a ragged and raveled appearance.

The decree is affirmed.