**MARCHUS v. DRUGE et al.**

No. 10041.

Circuit Court of Appeals, Ninth Circuit.

June 11, 1943.

Rehearing Denied July 16, 1943.

Chas. E. Townsend, of San Francisco, Cal., for appellant.

Boyken, Mohler & Beckley and A. W. Boyken, all of San Francisco, Cal., and Raymond Salisbury, of Oakland, Cal., for appellees.

Before MATHEWS, HANEY and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Marchus appeals from a judgment of the District Court in a suit brought under the Federal Declaratory Judgment Act (28 U.S.C.A. § 400), in which a counterclaim for infringement by plaintiffs of certain patents was filed.

Plaintiffs, Otto and Dan Druge, in 1927 operated a gasoline station in Oakland, California. At that time they agreed to test a combined tire gauge and filling valve designed by Amos Marchus. The Druges became interested in the device, sold their gasoline station, and launched the new enterprise of selling the Marchus air gauge. Marchus was to do the manufacturing. In 1928 he and the Druges entered into an agreement, whereby for a consideration the Druges were given exclusive selling rights for the gauge in designated districts. The Druges then became anxious to assume the responsibilities of manufacturing the gauge. However, in 1929, before any gauges were produced by them, they desired to retire from the new business and to resume the conduct of their service station which in the meantime had been returned to them.

Later in 1929, the Druges again sold their service station, and independent of Marchus, began to manufacture an air gauge and filling valve, under the co-partnership name of Druge Brothers Manufacturing Company. The co-partnership manufactured combined tire gauges and filling valves called "Tru-Flate Senior," from 1929 to 1940, "Tru-Flate Junior," from 1934 to 1940, and "Tru-Flate Midget," from about 1938 to 1940. It also manufactured hose connections termed "First," "Intermediate," and "Final" design according to the periods when they were being sold. The distribution and sale of all the Druge products was expanded until it became national in scope.

Meanwhile, Marchus was trying to interest someone in his gauge and hose connection. Eventually, in 1938 the Ames Specialty Company of Chicago became an exclusive licensee under the patents which Marchus had secured.

The Ames Company with Marchus· on December 28, 1938, filed suit in Illinois for the infringement of three patents against Cochrane Sales Company, a distributor of the Druge devices. On June 7, 1939, the Druges brought the instant action for declaratory relief in connection with the same three patents. The Druge interests moved to stay the Chicago proceedings pending final determination of the instant declaratory judgment suit, which had been filed in California, and the motion was

granted. A similar motion to dismiss or to stay proceedings in California, made by Marchus was denied. Thereafter, with permission of the court, Marchus filed a counterclaim to' the declaratory relief complaint, charging infringement of the three patents.

The original complaint listed four Marchus patents, but Patent No. 1,715,463, a combined tire gauge and filling valve, is not in issue here. Of the others Patent No. 1,845,922, claims 1-4, involves an air hose connection, Patent No. 1,892,435, claim 1, involves a combined tire gauge and filling valve, and Patent No. 2,012,540, claim 8, involves a tire gauge..

The District Court held that Patent No. 1,845,922, claims 1-4, inclusive, and Patent No. 2;012,540, claim 8, were invalid, and that the Druge devices infringe neither these patents nor Patent No. 1,892,435, assuming the latter patent in regard to claim 1 as valid. The court held further that the Druges had a license, by reason of laches and equitable estoppel, from Amos Marchus to manufacture the devices alleged to infringe the said three patents, and that the Druges were entitled to declaratory relief with respect to their license and right to manufacture, sell and use the tire gauges, valves and air hose connections here in issue.

It appears to us that the issues of infringement are extremely close. Holding this view, we are not willing to base our opinion upon infringement, for as we are about to show we believe the patents themselves have been anticipated by the prior art and that they are for that reason invalid.

### Patent No. 1,845,922.

The four claims of Patent No. 1,845,922 (1932) encompass a swivel joint between an air nozzle fitting and a hose so that the same may be relatively rotated without leakage of air. The claims of this combination patent, though four in number, are basically but one couched in a diversity of terms in each separate claim.

Marchus' expert witness testified that the novelty of the patent is found in the combination of the claims, since a swivel joint in itself is old. Marchus emphasizes in his opening brief that the invention lies in the method of sealing the swivel joint against air leakage. The patent in question calls for a main body with a longitudinal bore that terminates in a counterbore of the same diameter and depth as the counterbore of a hollow spindle, to which an air hose is attached. The spindle is held in place by a retaining member. Into the recess formed by the complementary counterbores of the main body and the spindle, is fitted a cylindrical rubber sleeve, which expands to seal the joint between the two counterbores upon the application of air pressure. The inner walls of the expansible sleeve thus become part of the bore at that place and are exposed to pressures in the line.

A patent to C. J. Smith (1909), No. 943,-900, provides for a pipe coupling, in which two hollow tubes, each having a somewhat conically formed seat, are fitted together. A cylindrical rubber sleeve fits across the joint between the two members and rests in the conical seat. Inner pressure causes the sleeve to expand to seal the joint. The patent does not involve a rotating joint, but the principle of the sealing device is closely analogous to that used by Marchus.

The Leyner patent (1914), No. 1,096,436, relates to a rotating joint which, like the Marchus device, utilizes a main body in which a spindle is held by a retaining gland. In a counterbore in the main body is fitted a rubber sleeve, which expands to prevent air leakage when exposed to air pressure in the line. This device differs from Marchus principally in the fact that the rubber sleeve rests in a space between the air line in the main body and the spindle instead of across the joint formed by the meeting of the two.

The Durbin patent (1917), No. 1,228,-541, refers to pipe couplings, and describes two rotating parts with abutting ends, in which a recess is formed to hold a rubber sleeve. Internal pressure will expand the sleeve, sealing the joint traversed by it.

■ It is apparent that the state of the related art at the time of the issuance of Patent No. 1,845,922 was such that the combination of elements therein manifested was within the scope of skilled mechanical ability. Therefore, we agree with the District Court that the four claims of the patent are invalid for want of invention in view of the prior art. ·

### Patent No. 1,892,435.

Patent No. 1,892,435 (1932) relates to a combined air gauge and filling valve, through which by the operation of a trigger valve compressed air is permitted to fill the tire. The air pressure in the tire forces the air gauge to register the pressure

poundage. It was originally filed June 3, 1929, as a division patent of Marchus' copending application which matured into Patent No. 1,715,463, issued June 4, 1929. Only claim 1 of the patent is in issue under the pleadings.

In connection with this patent the court below held merely that the Druge devices do not infringe claim 1 and made no statement as to the validity of the patent. Validity was not, of course, challenged in appellant's statement of points on appeal. Both parties seem to concede in their briefs that the matter was not raised on appeal; yet both devote some discussion to the validity of the patent. However, the evidence before the trial court is included in the transcript of the record on appeal.

Since we believe that the Druge devices did infringe Marchus Patent No. 1,892,435 (if it was valid), we are squarely presented with the question of our right to consider the validity of the patent in a situation where the trial court was silent on the subject, and where the appellant assigned no error and the appellees brought no cross-appeal raising the issue. There is some conflict in the authorities on the question. When a lower court declares only that a patent has not been infringed, it has been held that an appellate court cannot adjudicate the validity of the patent. Hazeltine Corp. v. Crosley Corp., 6 Cir., 130 F.2d 344; Shakespeare Co. v. Perrine Mfg. Co., 8 Cir., 91 F.2d 199. However, it has also been declared in connection with similar problems that an appellate court is not restricted to the questions decided below but may consider all material matters in issue. Kool Kooshion Mfg. Co. v. Mitchell Mfg. Co., 8 Cir., 102 F.2d 37; Mills Novelty Co. v. Monarch Tool & Mfg. Co., 6 Cir., 49 F.2d 28; Herman Body Co. v. St. Louis Body & Equipment Co., 8 Cir., 46 F.2d 879. Our own court by dictum has indicated its approval of the latter view in Oliver-Sherwood Co. v. Patterson-Ballagh Corp., 9 Cir., 95 F.2d 70, although in that case the trial court had held the patents valid but not infringed.

We believe the better view gives the appellate court the right to investigate the question of invalidity, providing all the evidence is before it and where, as is true in this case, there is no conflict in the evidence upon the issue. We proceed to inquire into the validity of Patent No. 1,892,435.

Claim 1 of the patent describes the device in issue: "1. A device for the purpose indicated comprising a body formed for hand-grasp having a chamber extending from the entrance at one side of the body toward the opposite side, and stopping short of said opposite side; ducts in the body communicating with said chamber, the first arranged for inlet connection with a source of fluid pressure, a second leading for discharge connection with a place of use, and a third leading for discharge connection with the pressure gauge, and a valve apparatus comprising a valve seating and housing element having ports and valve seating areas with valve means and valve operating connections for controlling the fluid pressure inflow from the source and its delivery to the place of use and to the pressure gauge, said element with the remainder of said valve apparatus mentioned being arranged for introduction into said chamber through said entrance and for fluid-tight fitting in the chamber at operative positions therein, of the several parts of said valve apparatus, and having at the outer extremity means for sealing fluid-tight the entrance to said chamber, and having arranged for protrusion fluid-tight therethrough for exterior manipulation, a thrust member for operating the valves."

The novelty of the claim, if any, lies in the fluid tight arrangement described in the claim, according to the expert witnesses. In other words, the lower end of the trigger valve structure which is screwed into the bottom of the dead end chamber makes a tight end and seals the chamber; also, according to the patent, the thrust member is fluid tight as it goes through the end plug. The claim indicates that fluid tightness is an essential element in each of these respects as well as in the added requirement of a fluid tight fitting in the chamber "at operative positions therein."

A brief review of the history of Patent No. 1,892,435 indicates the limited nature of the advance, if any, made over the prior art. The original application[1] contained thirteen claims, all of which were rejected on the basis of references to A. A. Freeman (1922), No. 1,420,997, and to W. R. Donaldson (1924), No. 1,495,679. In addition, the rejection stated that the shape

---

[1] The following information is taken from the File Wrapper of Patent No. 1,892,435.

of the device was not patentable.[2] Subsequently, the applicant struck out, amended, and added claims. His second application was rejected, the following language being used in part: "Claims 1 to 9 and 11 to 24 are each rejected for lack of novelty in the alleged combination in view of either Freeman or Donaldson. Applicant may have improved one or more elements of this old combination but the combination remains the same and is not patentable."[3] Again, amendments to several of the claims were made, but were declared not to avoid the rejection.[4]

Applicant appealed to the Board of Appeals, which upheld the decision of the Examiner on the ground that there was "nothing patentable in the rejected claims over the art cited and what is generally known to mechanics."[5] Upon applicant's request to the Board of Appeals for reconsideration of certain claims, claim 14 (which is claim 1 of the patent as issued) and claims 17 and 18 as amended were held allowable.[6] Patent No. 1,892,435 containing three claims and dated December 27, 1932, resulted.

We quote at length from the decision of the Board of Appeals allowing the three claims of the Marchus patent:

"In his brief appellant has underscored in red ink the elements which he considers novel. In claim 14 he underlines:

" 'a chamber extending from the entrance at one side of the body toward the opposite side and stopping short of said opposite side.'

"We considered this feature in our former decision and held that it did not distinguish materially over Donaldson which satisfies it except that his operating plunger 90 passes through an opening drilled in the otherwise closed end of the chamber. The claim also specifies that appellant's thrust member extends through the sealing device 14. These two limitations taken together, cover a different specific arrangement from that in either reference though Freeman's operating device does extend through the sealing device, as specified in the claim.

"This claim also covers 'a valve apparatus comprising a valve seating and housing element having parts and valve seating areas with valve means and valve operating connections * * * said element with the remainder of said valve apparatus mentioned being arranged for introduction into said chamber through said entrance and for fluid tight fitting into the chamber at operative positions therein of the several parts of said valve apparatus.'

"This element appears to cover the device shown in the lower part of Fig. 4 which differs from anything shown in the references, the nearest thing being the screw plug 73 of Donaldson but this element does not include the sealing plug 98 and the valve operating element 90 does not extend through the sealing port 98.

"These differences are considered sufficient to make this claim allowable."

It is obvious that the Board of Appeals considered the Marchus patent similar to Freeman and Donaldson except for Marchus' dead-end valve chamber together with the fact that his thrust member extends through a sealing plug at one end of the chamber. The Board also emphasized the fluid tight sealing plug and the thrust member extending fluid tight through it. The Board admitted that in one or the other of Freeman and Donaldson could be found the basic elements of the relationship between the valve mechanism and the dead-end chamber. Furthermore, a dead-end chamber holding the valve apparatus is an element of a patent to J. W. Burgess (1925), No. 1,531,731, not cited by the Patent Office. A fluid tight arrangement of the plug sealing the valve chamber and of the thrust member extending through said plug may be found in a patent to W. T. Dollar (1925), No. 1,527,032, not cited by the Patent Office.

No functional progress is achieved by the peculiarities of the Marchus structure stressed by the Board. Fluid tightness of the device at operative positions, that is, when air is passing from the source of supply into the tire and from the tire back into the gauging mechanism, is the practical function to be achieved. If the chamber housing the valve apparatus is fluid tight at operative positions, whether the thrust member extends through a sealing plug at

---

2 Id., Paper No. 2, letter mailed December 14, 1929, from Examiner.

3 Id., Paper No. 6, letter mailed July 31, 1930, from Examiner.

4 Id., Paper No. 8, letter mailed February 3, 1931, from Examiner.

5 Id., Paper No. 13, decision of March 8, 1932, of the Board of Appeals, U. S. Patent Office.

6 Id., Paper No. 16, decision of June 27, 1932, of the Board of Appeals, U. S. Patent Office.

the opening of a dead-end chamber, or through the top of the chamber sealed by a slightly different plug, is immaterial, for the function performed is identical and the means of performing it closely similar. Such alterations in a structure may increase its efficiency or its practicability, yet not advance beyond the realm of mechanical skill into the field of patentability. We believe that the Marchus claim falls into such a classification and therefore that it is invalid for lack of invention.

*Patent No. 2,012,540.*

■ Patent No. 2,012,540 (1935) embodies an improved air gauge for use in connection with a combined tire inflating and pressure gauge mechanism. The charge of infringement herein relates only to claim 8 of the patent.

"8. In an air gauge, an elongated body member having a bore, a spring pressed plunger in said bore, said body member being provided with an internal guide means extending longitudinally thereof, and an indicator constantly inclosed in said body and actuated by said plunger to slide longitudinally of the body, said indicator engaging said guide means and being retained against twisting movement thereby, and a sight window in said body member through which the indicator is visible."

We believe, with the District Court, that claim 8 is clearly invalid for want of invention in view of the prior art.

The patent contemplates a main body having two bores in which two pistons and two springs of different strengths are placed. Above is a compartment where two indicators, bearing the pressure markings, are positioned one on top the other. Between the two chambers are two slots along each of which passes a connection from a piston to an indicator. The purpose is to achieve a guide means to prevent the indicator from twisting. Upon the application of pressure, the weaker spring and then the stronger compress carrying the dial members lengthwise of the barrel until the proper pressure is indicated.

The only novelty in claim 8, according to Marchus' expert witness, is the guide means designed to eliminate the possibility of the indicator's rotating. We believe that the claim in issue was anticipated by the Vincent patent (1918), No. 1,263,165, which was not cited by the Patent Office according to the evidence. Vincent devised a hollow main body containing a spring controlled plunger for the purpose of raising an indicator upon the exertion of pressure.

Certain differences are evident between the two devices. In the Vincent structure the spring expands when the plunger moves under pressure, whereas in the Marchus structure the spring is compressed under similar circumstances. In the latter a guide means, shaped to conform with the radius of the plunger bore and reciprocally mounted therein, is provided to prevent the twisting of the indicator that tends to occur when the spring is compressed. No similar element is evident in the Vincent gauge because the fact that an extension spring has no tendency to twist when expanded makes a guide means unnecessary. Marchus' use of a different type spring and his addition of a simple means to counteract its twisting characteristic exhibits at best a high degree of mechanical skill. Consequently, there is not sufficient novelty to constitute an invention. That the Vincent patent refers to a pressure gauge alone and the Marchus patent to a combined filling valve and gauge is immaterial, particularly in view of the fact that claim 8 calls merely for a gauge.

■ Even though the nontwisting device in Marchus' gauge mechanism is considered of patentable novelty, there could be no infringement of the remainder of the device, for Marchus' expert witness admitted that the guide means was the only innovation in the structure. According to the well-defined rule, the novelty of a new function added to an old combination does not permeate the entire device to obviate a charge of infringement, Temco Elec. Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 328, 48 S.Ct. 170, 72 L.Ed. 298; Jonas v. Roberti, 9 Cir., 7 F.2d 563.

■ Relying on the decision of the Supreme Court in United States v. Esnault-Pelterie, 299 U.S. 201, 57 S.Ct. 159, 81 L.Ed. 123, appellant complains of the failure of the District Court to indicate upon what prior patents it relied as anticipating the patents in suit. We believe the findings of fact and conclusions of law in the instant case sufficient in this regard. Parker v. St. Sure, 9 Cir., 53 F.2d 706.

The long delay in filing suit by Marchus is alleged to constitute laches and much could be said herein upon that subject, but we think this opinion is sufficient without extending it to cover that issue.

Affirmed.