**HAYES SPRAY GUN COMPANY, a Corporation, Stanley A. Hayes and E. A. Patterson, Appellants,**

v.

**E. C. BROWN COMPANY, a Corporation, Appellee.**

**E. C. BROWN COMPANY, a Corporation, Appellant,**

v.

**HAYES SPRAY GUN COMPANY, a Corporation, Stanley A. Hayes and E. A. Patterson, Appellees.**

**No. 16813.**

United States Court of Appeals Ninth Circuit.

May 25, 1961.

Rehearing Denied July 7, 1961.

**320**

Christie, Parker & Hale, Ashley Stewart Orr, and Harold L. Jackson, Pasadena, Cal., for appellants Hayes Spray Gun Company.

Francis P. Keiper, Syracuse, N. Y. (Lyon & Lyon, Charles G. Lyon, Los Angeles, Cal., Roland Maxwell, Pasadena, Cal., and Helen F. Keiper, Syracuse, N. Y., of counsel), for appellee and appellant E. C. Brown Co.

Before BARNES, HAMLIN and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

The district court had jurisdiction over these patent and other claims arising under the United States patent laws (35 U.S.C.) (28 U.S.C. § 1338.) This court's jurisdiction over the appeals is conferred by 28 U.S.C. § 1291.

The controversy concerns a spraygun used for applying insecticides, fertilizers and other chemicals to plants. Spraying devices such as the flit gun and tank sprayer, in use for many years, are desirable because they produce a spray of uniform strength. The difficulty with all such sprayers is that they are operated by hand pumps and therefore require a great deal of effort to use. Inventors searched for many years to develop a gun that would be easy to use. One solution was to eliminate manual operation by using the pressure in hydrants connected to the domestic water supply: sprayers were designed to fit on taps or garden hoses so that the stream of water could provide the power that was needed to operate the gun and produce the spray. This procedure eliminated the effort required to operate the hand pumped machines, but it did not achieve the uniformity of operation which the hand machines had attained. Because of variations in water pressure, the strength of the chemical solution created by the pressure operated devices varied considerably. Thus a device was needed which would utilize the water pressure method of operation, and which would insure a constant ratio of chemical to water in the resulting spray. Plaintiffs-Appellants' devices purport to effect such a result.

I – No. 2,388,445. The Basic Patent.

The operation of appellants' devices (as well as the operation of other similar devices) can be understood by reference to Exhibit 153, reproduced below.

(FROM EXHIBIT 153 CASE 24, R. 6789)

The gun (E) is mounted upon a container (A) which acts as a reservoir of the chemical to be mixed with water and sprayed. Water proceeds through the bore of the gun (F) from the hose nozzle to which it is attached. A valve (H) controls the flow of the water into the metering section at the discharge end of the gun. This metering section shown in the insert is the heart of the device. Water flows from the bore (F) into the inlet (K) and then into a relatively long central passage (L). Here the velocity of the water increases because of the confined space through which it must flow. With the increase of velocity there is a decrease in pressure, the "venturi effect." As soon as the pressure is so reduced, a suction is created, drawing the chemical solution into the stream of water. The chemical solution travels through the tube (Q) inserted into the reservoir (A), enters the inlet (P), and is introduced into the water through a slit (R) in the metering jet (L). The mixed fluid then rushes out of the metering jet (L) and into a short chamber (M) which has a greater diameter than the long central passageway. The fluid finally flows into the outlet passage (N) which is of greater diameter than the preceding passage (M). Appellants secured patents on this device and other modifications of it.

The trial court held all five patents in issue to be invalid; held three of the patents not infringed if valid; held two patents infringed if valid; held appellants not liable for unfair competition (alleged in appellee's cross claim); held defendants not guilty of violating 35 U.S.C. § 292 (false marking); and denied attorneys' fees to either side. Both parties have appealed from the judgment so rendered, but the judgment regarding the alleged violation of 35 U.S.C. § 292 is not in issue.

Appellants devote the major portion of their opening brief to an attack upon the trial court's findings regarding invalidity. The crux of the decision regarding validity is the trial court's conclusion that the patent's claims would have been obvious to a mechanic skilled in the art at the time the invention was made (Conclusions IX, XI, XVI, XVIII). This conclusion, appellants maintain, is based upon a faulty analysis of the Hayes sprayer's method of operation.

The trial court found that the proportioning result achieved by Hayes, could be explained rather simply. The Hayes sprayer is so designed that when the water and chemical mixture emerges from the metering jet (L), it completely fills and seals against the walls of the short passage (M). This sealing insures that atmospheric pressure will not affect the operation in the metering jet (L), so that the variations in water pressure *alone* will cause variations in the amount of chemical solution aspirated into the metering jet. Thus the court suggests that the proportioning is achieved because reductions in the velocity of the carrier liquid (water) will result in a proportional increase in pressure in the metering jet and a correspondingly proportional decrease in velocity of the chemical solution. Conversely, increases in the velocity of the carrier liquid result in decreased pressure in the metering jet and increased velocity in the chemical solution. This theory of operation is erroneous. It assumes that an increase in the velocity in the metering jet, will, in the absence of atmospheric pressure, be met by a *directly* proportional increase in velocity in the chemical fluid. This assumption is inconsistent with Finding XXXIII where the court indicates that a decrease in metering jet pressure will be met by a *functionally* (viz. non-directly) proportional increase in velocity of the chemical fluid. Such "functional" relationships cannot explain why the Hayes device achieves a constant ratio between the carrier and chemical solutions. Thus the simple method of operation posited by the court falls. With it falls the conclusion that the means of achieving the new result, proportioning, were obvious to a mechanic skilled in the prior art. For the proportioning result could not be predicted by the application of scientific laws; it

could be discovered and proved only by the painful process of trial and error. Even assuming that the court's theory of operation is correct, it would still not be obvious that proportioning could be achieved by so constructing the gun bore that the fluid would fill and seal the chamber adjacent to and downstream from the metering jet.

In further support of its claim of invention, appellants point to the trial court's findings that there was great need for a sprayer such as Hayes' capable of proportioning (Findings IV, V, VI, and VII). Numerous other devices, the court found, did not meet the need so established (See Findings XXVI, XXVII), but the Hayes device did (Finding XXXI). In holding a patent for an improved pulley belt to be valid, in another case, the Supreme Court considered the facts that several previous efforts had failed and that the inventor himself had spent a number of years experimenting before he hit upon the solution.[1] Appellants also point to the commercial success of the device, a fact which, though not conclusive, tends to prove the originality and utility of the product.[2] Finally, appellants rely upon the presumption of validity arising out of the Patent Office's issuance of the patent.[3] Such presumption can be overcome only by clear and convincing evidence.[4] And there appears to be no suggestion that the Patent Office did not consider the most pertinent references before issuing the patent.

In short, the Hayes device must be regarded as an invention; it is an advancement which was not obvious at the time it was made. Thus the basic patent on the proportioning sprayer should have been sustained, unless some ground of invalidity, other than the lack of invention can be advanced.

The foregoing relates to Patent No. 2,388,445, the Stewart "basic patent." The other four patents include the advance covered by the basic patent, but, of course, they teach modifications. The court found all of these patents, like the basic patent, to be invalid. In argument appellants' only attack on these findings is that they are based upon the court's erroneous theory regarding the functioning of the Hayes sprayer. This argument as we have seen is, when coupled with certain other contentions, sufficient to demonstrate that the basic patent meets the required standards of invention. This same argument, standing alone, also produces the conviction that the trial court erred in the manner in which it arrived at its conclusions regarding some of the modification patents; but it does not affirmatively establish that these patents do, in fact, meet the high standards of invention. Thus with respect to some of the modification patents, further proceedings below will be required.

II – No. 2,381,589: The earlier issued (but subsequently applied for) patent.

With respect to patent No. 2,381,589, the crucial finding upon which the conclusion of invalidity is predicated is Finding LVIII. This finding, in terms, does depend upon the court's erroneous analysis of the Hayes sprayer's mode of operation. At page 136 of the Record, the court states:

"To change the aspiration chamber of the Stewart device in this manner should have been obvious to one skilled in the art in view of the relation between the pressure and velocity of the carrier liquid and chemical solution in these devices, as is explained in Finding XXXVI."

1. Gandy v. Main Belting Co., 1892, 143 U.S. 587, 594, 12 S.Ct. 598, 36 L.Ed. 272.

2. Eibel Process Co. v. Minnesota & Ontario Paper Co., 1923, 261 U.S. 45, 56, 43 S.Ct. 322, 67 L.Ed. 523.

3. Patterson-Ballagh Corp. v. Moss, 9 Cir., 1953, 201 F.2d 403, 406.

4. Ibid.

Since this finding is expressly predicated upon a misunderstanding of the facts, it is clearly erroneous. On the other hand, as noted above, appellants have not demonstrated here that this modification does, in fact, meet the standards of invention. Further proceedings below are thus required.

### III – No. 2,571,870: Gun Modification.

■ Patent No. 2,571,870 teaches the modification of the Hayes device to include a port which can be closed by covering it with a finger. The port is so placed that when it is uncovered, the atmospheric pressure reaches the metering jet and destroys the vacuum therein, thereby eliminating the suction and cutting off the aspiration of the chemical fluid into the water stream. The court was right in finding such modification to be an obvious one (Finding LXXIII). This modification had appeared on numerous nonproportioning sprayers, and it is no more difficult to conceive of such modification with respect to a proportioning sprayer than with respect to a nonproportioning sprayer. The modification has nothing to do with the unique operation of the Hayes sprayer. And the finding involved is in no way connected with the trial court's questionable theory regarding the operation of the sprayer. We find no invention, in addition to file wrapper estoppel (Exhibit T. Kelleher Patent No. 1,519,312, although before a different examiner).

### IV – No. 2,571,871.

On the other hand, the court's conclusion regarding the invalidity of Patent No. 2,571,871 is again based on the court's erroneous notions about the sprayer's mode of operation. The court found that in this device the expansion chamber downstream from the metering jet is of a much greater diameter; and consequently the stream does not flow full within the chamber providing the sealing which the court believed caused the proportioning action peculiar to the Hayes sprayer. The court found further that this defect was remedied through the use of a "choke which offers the increased resistance with results in sealing." This modification, the court concluded, would have been obvious to one skilled in the art. (Conclusion XVI.) Since the court's understanding of this patent is based upon the erroneous theory previously discussed, its conclusion regarding the patent's invalidity is erroneous. As with Patent No. 2,381,589, however, appellants have not proved that this patent is valid, and the conclusion of invalidity might be sustained on retrial.

### V – No. 2,592,896.

The findings regarding Patent No. 2,-592,896 are inadequate to support any conclusion. In Finding XCI, the court merely recites claim two of the patent in question. In its Conclusion of Law XVIII, the court holds that the modification would have been obvious to one skilled in the art, but this conclusion reveals nothing about the operation of the device or its intended result. Such sketchy findings of fact and conclusions of law are not sufficient to reveal the basis of the court's decision; nor to serve as an aid to this court in assessing the merits of the case on appeal.[5] This court requires further findings regarding the validity of this patent.

### VI – Summary as to validity of invention.

■ In our opinion, the court erred in holding invalid for want of invention Patents Nos. 2,388,445, 2,381,589, 2,571,-871 and 2,592,896. The existence of invention in basic patent 2,388,445 has, we think, been demonstrated on this appeal. Such a demonstration has not been made with respect to the remaining patents listed above, and they cannot, at this point, be held valid. A further determination by the trial court is in order. We hold that the court was correct in holding Patent No. 2,571,870 invalid for lack of invention.

5. 5 Moore, Federal Practice 2653.

## VII – Other issues regarding validity.

Our discussion thus far has dealt only with validity from the standpoint of invention. Appellee raises additional issues with respect to validity. Appellee contends that "Stewart Patent, 2,388,-445" (the "basic patent," applied for in 1942) and "Hayes Patent, 2,381,589" (applied for in September 1940) are almost identical. Appellee claims further that devices embodying the claims covered by these patents were on sale in early 1939. Thus, appellee claims, both patents are barred by 35 U.S.C. § 102,[6] which makes unpatentable devices which have been marketed for more than a year prior to application.

Appellants advance different answers to this contention with respect to each of the two patents in question. Appellants point out that the first application (No. 274,803) for the Stewart patent 2,388,445 was made in May of 1939. This application was acted on several times and ultimately rejected by the examiner in charge of the application. This rejection was affirmed by the Patent Office Board of Appeals on April 20, 1942. On September 3, 1942, before his time to appeal the Board decision had expired, Stewart filed his second application, number 457,-117, incorporating the same essential elements which appeared in the first application. Thus appellants contend, their second application was entitled to the same filing date as the first application, since both applications revealed the same invention and were pending at the same time.[7]

Appellee first attacks the factual basis of this position asserting that the device disclosed by the first application was dissimilar to that revealed in the second application. The trial court, however, concluded quite clearly and expressly that the first application was sufficient to support the second (Conclusion IV), and there is adequate evidence to support such a conclusion. So appellee presses its argument on another ground. Appellee points out that the second application (No. 457,117) made no reference to the first application (No. 274,803). Such concealment, appellee contends, works a fraud upon the Patent Office and the public, and precludes appellants' reliance upon the filing date of the original application. In this connection appellee points out that the first application was passed upon and rejected by the Board of Appeals. Such prior litigation may not have come to the attention of the patent examiner reviewing the second application in the absence of a cross-reference. Appellee in all this seeks to find support in 35 U.S.C. § 120 [8] which gives a second application the date of the first application, provided that the second application contains a cross-reference to the first.

The trial court correctly held, however, that section 120 is new law and can have no application to patents which is-

---

6. The applicable subsection reads as follows:

"§ 102 *Conditions for patentability; novelty and loss of right to patent*

"A person shall be entitled to a patent unless—

   *     *     *     *     *

"(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or * * *"

7. Godfrey v. Eames, 1863, 68 U.S. 317, 324–325, 17 L.Ed. 684.

8. 35 U.S.C. § 120 reads as follows:

"§ 120 *Benefit of earlier filing date in the United States*

"An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application. July 19, 1952, c. 950, § 1, 66 Stat. 800."

sued before its effective date, viz. January 1, 1953.[9] And the court further held, correctly, that prior to the enactment of 35 U.S.C. § 120, the law—both decisional and statutory—"did not require a cross-reference to a prior application in order to obtain the benefit of its earlier filing date."[10] The cross-referencing requirement is a salutary one, but it simply did not exist before 1953. Thus the effective date of the second application was May 20, 1939, and consequently the item was not in public use or on sale for more than one year prior to the application. Accordingly any oath to that effect connected with the second application was in substance true, and at worst, was false only in a very restricted and technical sense. There was no fraud on the public, or the Patent Office. Patent Examiner Bleeker handled both applications and knew of the first rejection and the Board of Appeals decision.

The foregoing has dealt with the assertion that Patent No. 2,388,445 was barred by prior use. Appellee also asserts that Patent No. 2,381.589 is barred by prior use. In response to this allegation, appellants contend that Patent No. 2,381,-*589* is different from the device revealed by No. 2,388,*445*, and is consequently not invalidated by the use of the Hayes sprayer being sold in 1939.[11] This contention is bound up with and inseparable from the court's conclusion regarding "invention," for if No. 2,381,589 is indistinguishable from the device used in 1939, it is not an advance over the basic patent No. 2,388,445, and should be held invalid for lack of invention. If it is so distinguishable, then clearly there is no prior use. Thus the question of prior use is but a makeweight and need not be resolved separately. As indicated previously, it is our belief that the trial court erred in holding No. 2,381,589 invalid on the ground it used, but we do not think a clear demonstration of the patent's validity has been established.

## VIII – Infringement.

Even if some of appellants' patents are valid, appellants have not of course, made out a case unless they can demonstrate that appellee has infringed upon those patents. The trial court found that defendants' sprayers (Models 1, 2, 3 and 4) contain the elements included in appellants' basic patent No. 2,388,445. Therefore the court held that patent to be infringed, if valid. There is ample support for the court's findings and conclusion. Reference to Exhibit 71, a diagram of defendant's device, reveals that the sprayer depicted is constructed in a fashion similar to the Hayes sprayer. In the crucial "metering portion" there is an inlet passage, a long central passage, an opening in the passage which allows the secondary fluid to enter the primary stream, a shorter passage of somewhat greater diameter than the central passage and a still larger outlet passage. Appellee attempts to distinguish its device from appellants' on the ground that its device, unlike appellants', does not have an enlarged bore portion adjacent its discharge end. Whether the two devices are identical in this respect is not relevant for they are identical functionally. The metering jet in both is positioned at the end of the bore directly in the path of the water stream. Appellee, however, urges a further distinction between the two devices. The metering jet in its sprayer is comprised of two spaced bushings rather than a single piece with an inlet cut into it. Thus, in appellants' de-

9. United States Fidelity & Guaranty Co. v. United States for Use and Benefit of Struthers Wells Co., 1908, 209 U.S. 306, 314, 315, 28 S.Ct. 537, 52 L.Ed. 804.

10. Timken-Detroit Axle Co. v. Eaton Axle & Spring Co., D.C.N.D.Ohio 1931, 56 F.2d 651; Corrington v. Westinghouse Air Brake Co., 2 Cir., 1910, 178 F. 711, certiorari denied 219 U.S. 584, 31 S.Ct. 469, 55 L.Ed. 346. 1952 U.S.Code Congressional & Administrative News, p. 2413. And the Patent Office Regulation relied upon by appellee (37 C.F.R. 1.78) was not adopted until December 31, 1948 (13 Fed.Reg. 9580).

11. Goodwin v. Borg-Warner Corp., 6 Cir., 1946, 157 F.2d 267, 272, certiorari denied 329 U.S. 799, 67 S.Ct. 491, 91 L.Ed. 683.

vice, the aspiration chamber is formed by a slit in the long central passageway, whereas in appellee's device, the chamber is created by the space between the bushing forming the central passageway and the bushing forming the adjoining larger passageway. The trial court specifically considered this argument and found that both devices are unitary in structure; it is not critical whether the four passages and aspiration chamber are contained in one piece of material or are contained in several pieces of material (Finding XLVIII). In other words, if the various passageways are similar in construction and operate together to produce the desired result, they must be considered to form a unitary device. The court's findings in this regard are, on their face, cogent and correct, and they are supported by expert testimony. The court did not err in holding appellants' basic patent to be infringed.

The trial court held that appellants' Patent No. 2,381,589 is infringed, if valid. This conclusion was based on a detailed comparison of appellants' and appellee's devices. Appellee contends that the phrase, "adapted to be interposed in a line", appearing in appellants' claims is a limitation so that no device not so adapted can be held to infringe. As the trial court pointed out, this phrase is descriptive indicating a desirable use of the sprayer but not in terms limiting such use. The conclusion that appellee's sprayer infringes Patent No. 2,381,589 is based upon findings which have not been shown to be clearly erroneous.

Patent No. 2,571,870 covers a modification which permits the user to control the spray mixture by eliminating suction in the metering jet. In our view, hereinbefore discussed, this patent was correctly held invalid, and consequently the infringement issue need not be reached.

■ The trial court held Patent No. 2,571,871 not infringed (Conclusion XVII) and appellants have not challenged this conclusion on appeal. Thus the holding of noninfringement must stand, but we do not agree with appellee that this fact makes moot the issue of the validity of Patent No. 2,571,871. In any subsequent litigation between these parties the trial court's holding of invalidity, absent reversal here, would be res judicata. Thus appellants have sufficient interest to press its contention that the trial court's holding of invalidity should be reversed.

■ The infringement issue in connection with Patent No. 2,592,896 concerns appellants' claims Number 11 and Numbers 1 through 5. In Finding XCV the court determined that appellants' claim Number 11 was not infringed. That claim calls for a bore of but one diameter in each of two bushings located in the metering section, but, the court found, in appellee's device the bores each have two diameters, when the chamfered portions of each are taken into account. Why the addition of these chamfered portions should relieve defendants from liability for infringement is not clear. As appellants point out, the addition of an element to a patented structure does not avoid infringement.[12]

The trial court also held claims one to five of the patent not infringed. The finding of noninfringement related to the existence of a stepped passageway through the main body of the spray gun. Both devices have such a passageway, but, the court found, the passageway in appellants' gun is used to locate the bushings within the body. Since the stepped passageway in defendant's devices does not perform this function, defendant's devices do not infringe appellants' patent even if it is valid. The asserted function of the stepped passageway as an aid to locating the bushings is not set out in the claims; it appears at page 3 of the application, as part of the explanation of the spray gun's operation. Appellants argue that a claim should not be limited to the precise embodiment disclosed by the specification unless such is the essence of the invention or unless it is necessary to do so in order to distinguish it from prior art. Clearly the use of stepped passage-

---

12. Jonas v. Roberti, 9 Cir., 1925, 7 F.2d 563, 564.

ways to locate the bushings is not the essence of this invention. And a narrow interpretation is not necessary to distinguish this invention from the prior art. Appellants' position here is a logical one and the case authority tends to support it.[13] We believe that appellants' Patent No. 2,592,896 is infringed by defendant's sprayers.

■ The court did not err in holding infringed patents Nos. 2,388,445 and 2,-381,589. The court did err in holding not infringed patent No. 2,592,896. The conclusion that Patent No. 2,571,871 is not infringed has not been attacked and should, accordingly, stand.

## IX – Unfair competition.

■ Appellee filed a cross-claim for unfair competition. Appellants had by publication in trade journals and direct communication with their own distributors informed the trade that it had brought suit against appellee because appellee's models 78–2, 78–3 and 78–5 infringed the five patents in issue in this case. The only substantial basis for describing this act as unfair competition is appellee's assertion that appellants did not, at trial, press the alleged infringement of Patent No. 2,592,896 by the models enumerated in the notice sent to the trade. In view of the difficulty attending the claims involved in this suit, and in view also of the substantial merit of a portion of appellants' claims, it is difficult to say that appellants' notice to the trade was made in bad faith. Unquestionably, a patentee has the right in good faith to notify purchasers and others of his intention to insist upon his patent rights even though he misconstrues the nature and extent of those rights.[14] The case of Donovan v. Wilson Sporting

Goods Co., 1 Cir., 1961, 285 F.2d 714, relied upon by appellee is inapplicable. There is nothing in this record to indicate that appellants gave "unnecessary" publicity to their infringement claims, nor does it appear that they included statements which they knew to be untrue. More importantly, in Donovan, the defendant did not rely upon the ground that its infringement claims were in fact true, i. e., legally correct. Here, of course, several of appellants' claims have been found to be legally correct. The trial court's conclusion that appellants did not commit any act of unfair competition is not erroneous.

## X – Attorneys' fees.

■ The court refused to award attorney's fees to appellee. Appellee claims that this is an unusual case and that consequently the court should have awarded attorney's fees (35 U.S.C. § 285).[15] But section 285 states only that a court *may* award attorney's fees in exceptional cases. It is a matter of discretion, and the court cannot be reversed except for abuse of discretion.[16] The cases cited by appellee, such as Talon, Inc. v. Union Slide Fastener, Inc., 9 Cir., 1959, 266 F.2d 731; Piet v. United States, 9 Cir., 1960, 283 F.2d 693; and Shingle Product Patents v. Gleason, supra, all involved *affirmances* of the trial court's exercise of discretion in awarding attorney's fees. Hence even if the instant case can in some way be described as exceptional, the trial court cannot be reversed unless its refusal to award attorney's fees constituted an abuse of discretion. No such abuse has been shown.

Reversed and remanded for further proceedings below consonant with this opinion.

13. Kennedy v. Trimble Nurseryland Furniture, Inc., 2 Cir., 1938, 99 F.2d 786.

14. Bechik Products v. Flexible Products, 2 Cir., 1955, 225 F.2d 603.

15. 35 U.S.C. § 285: *"Attorney fees*—The court in exceptional cases may award

reasonable attorney fees to the prevailing party. July 19, 1952, c. 950, § 1, 66 Stat. 813."

16. Shingle Product Patents v. Gleason, 9 Cir., 1954, 211 F.2d 437, 441.