**HALLIBURTON COMPANY,**
**Plaintiff-Appellee,**

v.

**The DOW CHEMICAL COMPANY,**
**Defendant-Appellant.**

**No. 74–1343.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan 20, 1975.

Decided April 28, 1975.

James E. Cockfield, Washington, D. C. (Joseph R. Magnone, Burns, Doane, Swecker & Mathis, Washington, D. C.; John H. Tregoning, Duncan, Okl., and John M. Imel, Tulsa, Okl., on the brief), for plaintiff-appellee.

Dugald S. McDougall, Chicago, Ill. (Robert H. Harry, Donald E. Phillipson, Denver, Colo., R. James Unruh, Tulsa, Okl. and Bernd W. Sandt, Midland, Mich., on the brief), for defendant-appellant.

Before BREITENSTEIN, McWILLIAMS and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is a declaratory judgment action by plaintiff-appellee Halliburton Company claiming invalidity and noninfringement of U. S. Patent No. 2,959,555 owned by defendant-appellant Dow Chemical Company. Dow counterclaimed for infringement. After trial to the court, the patent was declared invalid and Halliburton was awarded attorneys' fees. Dow appeals.

At issue is a chemical cleaning process to remove scale deposits in large boilers used for the steam generation of electricity and other purposes. The scale causes loss of thermal efficiency. Water used to create steam is recirculated through copper tubes for condensation. The water reacts chemically with the steel in the boiler walls to create iron-oxide scale on the boiler's inner surfaces. During the recirculation the water picks up copper and this is also deposited on the boiler surfaces. In a typical case, a year's use of a large utility boiler will result in formation of about 2,000 pounds of iron-oxide scale and 200 pounds of copper.

Boiler "down time" is expensive to the utility industry, $40,000 or more a day, because electricity must then be acquired from some other source. An earlier cleaning process used hydrochloric acid which removed the iron-oxide scale. The difficulty was that the copper, which was initially dissolved in the acid, immediately plated out on the clean steel surface to form thin foil sheets which became dislodged and clogged the tubes. A bromate-ammonia solution was used to remove the copper. That solution would not remove the iron oxide. Usually a single bromate-ammonia treatment would not remove all of the copper and two bromate-ammonia washes were needed, one before and one after the

acid wash. This procedure increased the "down time" and the expense.

The Dow patent covers a one-step process wherein the boiler is filled with a hot solution of hydrochloric acid in water, an acid inhibitor, and a complexing agent known as thiourea, or a derivative thereof. The hydrochloric acid dissolves the iron oxide. The dissolved iron then causes the copper to dissolve in the cleaning solution. The thiourea has a complexing reaction with the dissolved copper atoms, holds them in solution, and prevents them from replating on the boiler walls. After the cleaning solution has been in the boiler long enough to dissolve the iron oxide and copper, usually about six hours, it is flushed out and the boiler given a neutralizing rinse. After that, the boiler is ready to go back in service.

Halliburton contends, and the district court found, that the Dow patent was invalid because in the words of the statute, 35 U.S.C. § 103, "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

■ Obviousness requires factual determinations. Moore v. Shultz, 10 Cir., 491 F.2d 294, 300, cert. denied, 409 U.S. 872, 95 S.Ct. 203, 34 L.Ed.2d 124 and cases there cited. The findings on the issue of obviousness are entitled to the usual respect accorded determinations of fact. Hinde v. Hot Sulphur Springs, Colorado, 10 Cir., 482 F.2d 829, 834, 836. Dow seeks to avoid this rule on the ground that the court mechanically adopted the findings and conclusions submitted by Halliburton. The record does not sustain this claim. After trial, the court requested both Dow and Halliburton to submit proposed findings. The court considered the submissions of each party, heard argument and agreed with Halliburton. The findings stand if supported by evidence. United States v. El Paso Natural Gas Co., 376 U.S. 651, 656,

84 S.Ct. 1044, 12 L.Ed.2d 12. An appellate court does not try factual issues de novo, Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129. The clearly erroneous rule applies. Ibid.

■ Graham v. John Deere Co., 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545, mentions three basic factual inquiries essential to a determination of obviousness. They are (1) scope and content of the prior art, (2) differences between the prior art and the claims at issue, and (3) level of ordinary skill in the pertinent art. Each of these was considered and, on substantial evidence, resolved against Dow. John Deere also states three secondary considerations, (1) commercial success, (2) long felt but unresolved needs, and (3) failure of others. Dow relies on these secondary considerations. The need for consideration of secondary evidence is "an evidentiary question primarily entrusted to the district court." Potter Instrument Company, Inc. v. Odec Computer Systems, Inc., 1 Cir., 499 F.2d 209, 211. Lack of invention cannot be outweighed by secondary factors. Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 330, 65 S.Ct. 647, 89 L.Ed. 973.

The use of acid solutions containing thiourea was not novel per se but had been suggested in two expired Dow patents which taught their use as a corrosion inhibitor but said nothing about the copper problem. The laboratory director of a Dow subsidiary, Paul Cardwell, presented a paper on chemical cleaning to the Engineer's Society of Western Pennsylvania, in October, 1953. Therein he noted the possibility of the use of complexors in acid to remove copper and said that complexing agents "have not as yet played an important part in chemical cleaning operations, due to their high, prohibitive cost." With reference to complexors he said that they "are being studied with the thought that eventually they will become more economical and can be utilized to provide more effective solvents for the chemical removal of deposits." A paper by Cardwell entitled

"Chemical Cleaning in Central Stations" was published in the January, 1954, issue of the Transactions of the American Society of Mechanical Engineers. The article gave much the same information as that in the earlier paper. Neither Cardwell discussion dealt with specific complexing agents and neither was presented to the Patent Office in connection with the patent application.

Abel and Martin, the claimed inventors, worked for Dow under the supervision of Cardwell. In November, 1953, Cardwell assigned the boiler-cleaning problem to Abel. Although the evidence does not show that Abel had seen the Cardwell papers, it does establish that he had access to them. Abel started in a "logical place" and used conventional techniques. Among the first compounds which he tried were thiourea derivatives and in his words the tests showed that "an acidic solution containing thiourea would prevent copper replating." The result was obtained in two or three days after he had started. The project was later taken away from Abel and assigned to Martin.

Dow points out that the Cardwell papers did not specifically mention thiourea and argues that the complexor's affinity for copper in the presence of greater quantities of iron was totally unexpected. Dow insists that the Cardwell papers would have discouraged, rather than encouraged, experimentation with thiourea.

Prof. Quagliano, a witness for Halliburton, testified that thiourea was known to form stable complexes with copper, and that a researcher told to find a complexor for a particular metal would consult a textbook such as Sidgwick wherein it is said that "the affinity of these metals [including copper] for sulphur is much greater than for oxygen." Thiourea contains sulphur. Quagliano testified that the presence of ions other than copper would not deter experimentation with a complexor because complexing abilities depend on conditions. He further said that it had been well established that "the cuprous ion even in acid solution, fairly strong acid solution, forms an extremely stable complex. Thiourea forms an extremely stable complex with cuprous ion."

Dow says that the prolonged research which both it and Halliburton devoted to the subject shows that the subject matter of the patent was not obvious. It characterizes Abel's discovery as "a stroke of good fortune," and argues that an invention of merit is patentable whether it results from arduous research, sprang from a flash of genius "or was born of serendipity—i. e., good luck."

■ Abel may have had good fortune but he proceeded routinely with conventional techniques and quickly arrived at a conclusion. Routine experimentation is not invention. Continental Oil Company v. Witco Chemical Corporation, 7 Cir., 484 F.2d 777, 786. See also Mandel Brothers, Inc. v. Wallace, 335 U.S. 291, 295, 69 S.Ct. 73, 93 L.Ed. 12.

■■ In his deposition Abel said that he chose to experiment with thiourea because sulphur-containing compounds were notorious catalyst poisons. For all that appears in the record this reasoning may have related to the complexing ability of thiourea. Whatever his reasons, Abel was charged with knowledge of the prior art. Merit Mfg. Co. v. Hero Mfg. Co., 2 Cir., 185 F.2d 350, 352. If an invention is non-obvious the manner in which it is made will not negative patentability. 35 U.S.C. § 103. On the other hand, the subjective good luck of a particular individual will not give rise to a valid patent if, as an objective matter, the non-obviousness test is not met. See Grant Paper Box Co. v. Russell Box Co., 1 Cir., 151 F.2d 886, 891, rev'd on other grounds, 154 F.2d 729, cert. denied 329 U.S. 741, 67 S.Ct. 79, 91 L.Ed. 639.

■ Dow relies on the presumption of patentability. See Eimco Corporation v. Peterson Filters and Engineering Co., 10 Cir., 406 F.2d 431, 434, cert. denied 395 U.S. 963, 89 S.Ct. 2105, 23 L.Ed.2d 749. The presumption is rebuttable, Admiral Corporation v. Zenith Radio Corpo-

ration, 10 Cir., 296 F.2d 708, 712, especially where prior art is not disclosed to the Patent Office. In the instant case the presumption is refuted by the showing of obviousness. The determination of the district court on this issue is sustained by substantial evidence and is binding on us. See Scaramucci v. Dresser Industries, Inc., 10 Cir., 427 F.2d 1309, 1313. The patent is invalid. Accordingly, the claim of infringement need not be considered. Ohio Citizens Trust Company v. Lear Jet Corporation, 10 Cir., 403 F.2d 956, 959, cert. denied 394 U.S. 960, 89 S.Ct. 1308, 22 L.Ed.2d 561.

■ The district court also found the patent invalid because of Dow's misconduct in (1) improper execution and filing of a continuation-in-part of the patent application and (2) an improper claim of joint invention. These need not be considered in connection with patent validity because we have held that the patent was obvious and hence void. However, they, along with the nondisclosure of the Cardwell papers, are pertinent to consideration of the award to Halliburton of attorney fees.

■ Award of attorney fees to the prevailing party in patent litigation may be made in "exceptional cases." 35 U.S.C. § 285. Entitlement to attorney fees comes from "such misconduct upon the part of the losing party as to constitute fraud on the Patent Office or so unfair and reckless as to make it unconscionable for the prevailing party to sustain the expense of counsel." Q–Panel Company v. Newfield, 10 Cir., 482 F.2d 210, 211. If the case is an exceptional one, the award of attorney fees is discretionary with the trial court. Iron Ore Company of Canada v. Dow Chemical Company, 10 Cir., 500 F.2d 189, 195. The court characterized Dow's misconduct as unfair and reckless and said that it would be unfair for Halliburton to sustain the expense of counsel in this litigation.

■ In a patent litigation nondisclosure of prior art is insufficient to sustain an award of attorney fees unless it is done in bad faith with intent to deceive.

Cf. Admiral Corporation v. Zenith Radio Corporation, 10 Cir., 296 F.2d 708, 716–717, and Everest & Jennings, Inc. v. Colson Corporation, 7 Cir., 371 F.2d 240, 243, cert. denied 387 U.S. 918, 87 S.Ct. 2032, 18 L.Ed.2d 971. Dow has consistently maintained throughout this litigation that the Cardwell papers are not pertinent prior art. Nothing in the record sustains the claim that they were withheld with an intent to deceive.

Halliburton claims that Dow violated 35 U.S.C. § 102(f) in asserting joint invention by Abel and Martin. The record supports the conclusion that Abel was the inventor. Both Abel and Martin worked for Dow. The participation of each was in good faith. Dow did not benefit by the joinder. Dow patent counsel may have made an error of judgment, but we find no evidence of a deceptive intent.

Patent Office Rule 52(c), 37 C.F.R. § 1.52(c), says that alterations are impermissible after execution of the patent papers. Patent Office Rule 56, 37 C.F.R. § 1.56 provides that "any application altered or partly filled in after being signed or sworn to * * * may be stricken from the files." After the papers had been signed by Abel and Martin, the Dow patent agents decided to add material and claims. This was done and the altered papers were filed in the Patent Office before resubmission to, or reexecution by, both Abel and Martin. Dow does not deny the rule violation. It argues that the acts were contrary to Dow policy and occurred without the knowledge or approval of any responsible Dow official. Additionally, Dow asserts that it gained nothing by the alterations to which it was not entitled.

Dow is liable for the acts of its patent agents within the scope of their authority even when done against company policy. See United States v. Hilton Hotel Corporation, 9 Cir., 467 F.2d 1000, 1004, cert. denied 409 U.S. 1125, 93 S.Ct. 938, 35 L.Ed.2d 256. Although rule violation is serious misconduct, Wainer v. Ervin, 122 USPQ 608, the rule itself does not require the striking of the application.

It says that the application "may" be stricken. The violation did not come to light until the discovery proceedings in this action. From the record it appears that Dow gained nothing by the misconduct and no one was deceived by it.

The award of attorney fees under § 285 is compensatory rather than punitive. Mueller Brass Co. v. Reading Industries, Inc., E.D.Pa., 352 F.Supp. 1357, 1381, aff'd, 3 Cir., 487 F.2d 1395. Halliburton brought this suit. Nothing shows that it was forced into doing so by any unfair or reckless conduct of Dow. We find nothing in the record to sustain the conclusion that the conduct of Dow was so fraudulent, unfair, or reckless as to make it unconscionable for Halliburton to bear its legal expense.

The judgment is affirmed insofar as it denies patent validity, and is reversed on the award of attorney fees. Costs in this court shall be borne 75% by Dow and 25% by Halliburton.