SAF–GARD PRODUCTS, INC., et al.,
Plaintiffs-Appellees,

v.

SERVICE PARTS, INC., et al.,
Defendants-Appellants.

No. 74–1319.

United States Court of Appeals,
Ninth Circuit.

March 23, 1976.

Rehearing Denied May 10, 1976.

---

Eugene C. Knoblock (argued), Oltsch & Knoblock, South Bend, Ind., for defendants-appellants.

William H. Drummond (argued), Drummond, Nelson & Anderson, Phoenix, Ariz., for plaintiffs-appellees.

* Honorable James M. Fitzgerald, United States District Judge, District of Alaska, sitting by designation.

1. Other defendants to the action are Balkamp, Inc., an Indiana corporation, Genuine Parts Co., a Georgia corporation, Town and Country Chrysler Plymouth, an Arizona corporation, and Marvin Hawkes, dba Hawkes Radiator Service, Mesa, Arizona. These defendants are customers of Service Parts and distribute and resell the radiator accessory kits it manufactures.

## OPINION

Before WALLACE and KENNEDY, Circuit Judges, and FITZGERALD,* District Judge.

ANTHONY M. KENNEDY, Circuit Judge:

Saf-Gard Products, Inc. brought suit for damages and injunctive relief from patent infringement and related acts of unfair competition. Service Parts, Inc., named as defendant,[1] asserted that the patent was invalid. The trial court determined that Saf-Gard's patent was valid, that Service Parts had infringed it, and that Service Parts had otherwise engaged in unfair competition. The court further ruled that this is "an exceptional patent case within the meaning of Title 35 U.S.C. §§ 284 and 285."[2] It reserved damage determination until the accounting phase of the trial.

Service Parts appealed pursuant to the statute granting jurisdiction to review a patent case that is final except for an accounting. 28 U.S.C. § 1292(a)(4). We affirm the trial court's determination that Saf-Gard's patent was valid and that Service Parts infringed upon it. For the reasons set forth below we do not rule on the other determinations of the district court.

## I. DESCRIPTION OF THE PATENTED DEVICE

The patent in question, U.S. Patent No. 3,601,181, is entitled, "Method and Apparatus for Purging Air from Internal Combustion Engine Cooling Systems."[3] The pat-

2. These sections authorize award of increased damages and attorneys' fees in appropriate cases, although only section 285 uses the term "exceptional."

3. The "181" patent which was the subject of the litigation was substituted for U.S. Patent No. 3,499,481, which had been originally issued for this invention. The "481" patent was then withdrawn from the litigation and surrendered to the Patent Office and an application for reissue filed February 22, 1972. A reissue patent (Re. 27,965) was issued on April 9, 1974, subsequent to the commencement of this appeal.

ented device is designed to increase the efficiency of automobile engine cooling systems.

The inventor of the patented device is Walter C. Avrea, a mechanic and vehicle maintenance superintendent, who holds other patents in the automotive field. From study and experimentation the inventor determined that the following performance and maintenance problems in engine cooling result, wholly or in part, from the presence of air inside the system: formation of a froth which retards heat transfer; formation of sludge, which impairs circulation of liquid coolant; oxidation of metal parts and corrosion of rubber hoses, which promote boiling; cavitation,[4] which strains, or sometimes breaks, the water pump. The inventor claims the patented device attacks these problems by purging air from the cooling system during engine operation and by preventing re-entry of air when the engine stops.

The invention can be made accessory to a standard radiator system. It uses a vessel called an accumulator, which serves as second liquid storage tank. The accumulator has a vent, and is mounted in the engine compartment. A tube connects the low point in the accumulator with the overflow outlet in the radiator's filler neck. Another essential component of the system is a special radiator cap,[5] with threads and gasket designed to assure a hermetic seal whose function is to prevent leakage of air into the radiator.[6]

Upon installation, the cooling system is filled to overflowing and sufficient liquid is placed in the accumulator to cover the opening of the overflow tube. Thermal expansion of the liquid in the cooling system builds overflow pressure and causes the ejection of air, liquid and steam through the overflow tube into the accumulator. Expelled gaseous matter bubbles to the top of the liquid in the vented accumulator leaving the coolant in the accumulator air free. After the engine is stopped, contraction of the cooling liquid in the radiator causes a pressure differential with the outside atmosphere, forcing liquid from the accumulator back into the radiator. Because the opening of the overflow tube is at all times kept below the surface of the fluid in the accumulator, no gaseous matter is readmitted into the otherwise hermetically sealed system. After several cycles of operation, substantially all air is eliminated from the cooling system, leaving only noncompressible liquid coolant. The system therefore becomes pressurized very quickly after the engine is started, thus preventing boiling of the coolant at normal engine temperatures.

## II.  THE ACTS OF INFRINGEMENT

■  Approximately one year after starting business, Saf-Gard, the corporation owning the Avrea patent, began negotiations with representatives of Service Parts who sought a license to manufacture and sell the patented device.[7] During negotiations, representatives of Saf-Gard disclosed critical items of information, including the source of the special radiator caps, results of experimentation and research, and detailed technical data regarding operation of the patented device. Fifty-five days after meeting with Saf-Gard, Service Parts, without performing any research, development or experimentation, began selling a device that was substantially identical in structure and function to the patented product. In the ensuing period until trial in 1973, Serv-

---

4.  Cavitation is defined as "The formation of a vacuum around a propeller or fan revolving at a speed above a certain critical value (depending upon the size, number and shape of the blades). It causes a loss in efficiency." Webster's New International Dictionary of the English Language 429 (2d ed. 1934).

5.  This cap was built to Avrea's specification by Stant Manufacturing Co. when it became evident that existing caps did not provide a sufficiently airtight seal.

6.  The above description is one of two basic configurations of the invention, both operating on the same principle. Variations exist in the precise place where the overflow tube is connected to the cooling system.

7.  Service Parts had learned of Saf-Gard's new product through a feature article in the April 1969 issue of *Hot Rod* Magazine.

ice Parts sold approximately one quarter million such devices. These findings of fact are not clearly erroneous, Fed.R.Civ.P. 52(a), and support the finding of an infringement if the patent is valid.

## III. PATENT VALIDITY

■ The question of validity was considered at length by the trial judge. We must consider whether his subsidiary findings of fact support the legal conclusion that the patent was valid. *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545, 556 (1966); *Hensley Equipment Co. v. Esco Corp.,* 375 F.2d 432, 436 (9th Cir. 1967); *Chicago Rawhide Manufacturing Co. v. Crane Packing Co.,* 523 F.2d 452, 460 (7th Cir. 1975).

■ The appellant contends that the district court committed error by its determination that the Saf-Gard patent met the statutory requirements that it be novel, 35 U.S.C. § 102(a), and that it not have been obvious to a person of ordinary skill in the art, *id.* § 103.[8] We consider each of these objections.

### A. *Novelty*

■ The invention was novel under section 102, because, as the trial court conclud-

ed, it was not anticipated by a previously known or described method or device. This finding was proper in light of the narrow reading given that section: ·

"[A]nticipation is strictly a technical defense. Unless all of the same elements are found in exactly the same situation and united in the same way to perform the identical function" in a single prior art reference "there is no anticipation."

*Walker v. General Motors Corp.,* 362 F.2d 56, 58 (9th Cir. 1966), *quoting, Stauffer v. Slenderella Systems, Inc.,* 254 F.2d 127, 128 (9th Cir. 1957). There was no such single prior art reference proven in this case.[9] Thus, the patent is not invalid for failure to meet the standards of section 102.

### B. *Obviousness*

The substantial issue here is whether or not the Avrea invention would have been obvious to a person of ordinary skill in the art, the determinative test of patentability under section 103. We agree with the trial court's conclusion that the invention was not obvious.

In considering this question the trial court recognized the statutory presumption of validity accorded to patents pursuant to

---

8. The statute also requires that an invention be useful, 35 U.S.C. § 101, but the appellant does not challenge the patent's validity on this basis.

By including these requirements in the Patent Act of 1952, Congress continued its historic statutory plan to maintain the delicate balance between granting exclusive rights to developers of meritorious inventions and allowing general use of designs properly within the public domain. *Graham v. John Deere Co.,* 383 U.S. 1, 5–17, 86 S.Ct. 684, 687–93, 15 L.Ed.2d 545, 549–556 (1966); see *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.,* 340 U.S. 147, 152–53, 71 S.Ct. 127, 130–31, 95 L.Ed. 162, 166–67 (1950); *Exer-Genie, Inc. v. McDonald,* 453 F.2d 132, 134 (9th Cir. 1971), *cert. denied,* 405 U.S. 1075, 92 S.Ct. 1498, 31 L.Ed.2d 809 (1972).

The right of exclusivity granted by the Patent Act is an incentive to invention and early disclosure of new devices. *Troxel Mfg. Co. v. Schwinn Bicycle Co.,* 465 F.2d 1253, 1258 (6th Cir. 1972), *cert. denied,* 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974); Comment, *A Market Oriented Revision of the Patent System,* 21 UCLA L.Rev. 1042, 1042–47 (1974). While the

Patent Act of 1952 constitutes the last major revision of the law in that area, the general scheme is substantially older, originating in the Patent Act of 1836. Ch. 357, 5 Stat. 117 (1836).

9. We note that appellant introduced evidence at trial tending to show that as early as 1965 certain models of the Triumph automobile sold in the United States were equipped with cooling systems which contained all of the components of the Avrea system. Since this would have been more than one year prior to the filing of the patent application by Avrea, the evidence could have served to invalidate the patent under section 102. However, the evidence presented left considerable doubt whether the 1965 Triumphs were equipped with radiator caps containing gaskets, and if so, whether those gaskets provided the type of airtight seal which is essential to the operation of the Avrea system. See note 5 *supra.* The trial court inspected two Triumph automobiles and heard expert testimony on this point. It found that the patented device was not the same in design or operation as the Triumphs. Not being clearly erroneous, this finding is binding on us on appeal.

35 U.S.C. § 282. Appellant contends that presumption was destroyed or greatly weakened because the patent examiner failed to consider adequately certain pertinent items of prior art: the Herbon patent, the Triumph "No-Loss" Cooling System, the Gratzmuller patent, and the Karmazin patent.[10] *See Norwood v. Ehrenreich Photo-Optical Industries,* 529 F.2d 3, 9 (9th Cir., 1975); *Deere & Co. v. Sperry Rand Corp.,* 513 F.2d 1131, 1132 (9th Cir.), *cert. denied,* 423 U.S. 914, 96 S.Ct. 218, 46 L.Ed.2d 142, 44 U.S.L.W. 3238 (1975); *Hewlett-Packard Co. v. Tel-Design, Inc.,* 460 F.2d 625, 628 (9th Cir. 1972).

■ The trial court made a general finding that the patent office had considered "all of the patents asserted by the defendants to constitute conflicting prior art." The record supports this finding as to the Herbon and Gratzmuller patents. As to the Triumph system, the court specifically found that the patent office had considered the British Leyland patent, and thus had before it the mechanically equivalent system used on Triumph automobiles manufactured by British Leyland. Appellees point to no evidence in the record warranting a finding that the patent office considered the Karmazin patent; but the Herbon patent and Triumph system were more pertinent than Karmazin. Since the patent office considered items which were representative of the prior state of learning and which were more pertinent than one allegedly omitted, the failure to consider Karmazin does not destroy the presumption that the patent office made a proper determination. "Alleged art that is cumulative to cited art does not weaken or destroy the presumption of validity." *Schnadig v. Gaines Manufacturing Co.,* 494 F.2d 383, 391 (6th Cir. 1974). And the presumption is further strengthened on appeal where, as here, the trial court conducted an independent examination of the pertinent prior art and concluded that the patent was validly issued. *Farr Co. v. American Air Filter*

*Co.,* 318 F.2d 500, 502 (9th Cir.), *cert. denied,* 375 U.S. 903, 84 S.Ct. 192, 11 L.Ed.2d 143 (1963); *Neff Instrument Corp. v. Cohu Electronics, Inc.,* 298 F.2d 82, 87 (9th Cir. 1961).

■ However, finding that the presumption remains applicable does not end the inquiry because defendants could, by clear and convincing evidence, rebut it. *Hayes Spray Gun Co. v. E. C. Brown Co.,* 291 F.2d 319, 322 (9th Cir. 1961); *Patterson-Ballagh Corp. v. Moss,* 201 F.2d 403, 406 (9th Cir. 1953). This the defendants have failed to do.

In this case the trial court did not rely exclusively on the presumption of validity. It made an independent inquiry to determine if the patent was obvious. It considered no fewer than 89 prior art references and made extensive inquiries into the state of the art as it existed when Avrea applied for a patent. The basic components of the Avrea system were not new; they appeared in over 70 of the prior art references studied by the court and were, in the words of the trial court, "combined in almost every conceivable manner." But, significantly, no prior combination sought to achieve the critical result of keeping air out of the system *both* while the engine was on and while it was off. This operating principle was Avrea's idea. His mechanical system, while relatively simple, was the first to purge air permanently from the cooling system. No previous device accomplished this result, either purposely or fortuitously.

In some patent cases an operating requirement may be readily apprehended, but its mechanical implementation difficult for an inventor to achieve. *See, e. g., Neff Instrument Corp. v. Cohu Electronics, supra,* 298 F.2d at 83–84. The reverse may be true in other cases, where the operating principle is obscure, but once perceived, its design becomes relatively simple. *See, e. g., Eagle Iron Works v. McLanahan Corp.,* 429 F.2d 1375, 1376–82 (3d Cir. 1970). Invention may exist in either case if the re-

---

**10.** The Herbon system is embodied in U.S. Patent No. 3,265,048; the Triumph system is embodied in British Patent No. 896,850; the Gratzmuller invention is embodied in U.S. Patent No. 3,162,182; and the Karmazin device is U.S. Patent No. 1,761,396.

sulting benefit to the user is one which was not previously achieved and was not obvious from the prior art. Our case appears to fall in the second category: the primary creative value of the invention inheres in the principle for its operation, and the mechanical means for achieving it are readily obtained.

■ Even a minor change may produce a patentable invention, where the result could not have been readily predicted beforehand by one skilled in the art. *See, e. g., United States v. Adams,* 383 U.S. 39, 51–52, 86 S.Ct. 708, 714–15, 15 L.Ed.2d 572, 580–8, (1966); *Higley v. Brenner,* 128 U.S.App. D.C. 290, 387 F.2d 855, 858–59 (1967) and cases cited therein. This court has therefore consistently rejected arguments that a patent must fail because its components are not new.

> Carried to its logical conclusion, the argument . . . would result in a rule . . . [precluding] the patenting of virtually every new mechanical or electrical device since the vast majority, if not all, involve the construction of some new device (or machine or combination) from old elements.

*Reeves Instrument Corp. v. Beckman Instruments, Inc.,* 444 F.2d 263, 270 (9th Cir.), *cert. denied,* 404 U.S. 951, 92 S.Ct. 283, 30 L.Ed.2d 268 (1971) (footnote omitted). The court further noted that the very language of section 103 requires that "the inquiry into patentability must be drawn toward the 'subject matter as a whole' and not to the elements of a claimed combination and their individual novelty." *Id.*

■ This court has made it clear, moreover, that an invention will not be denied a patent because it embodies a solution which seems simple and obvious with the benefit of hindsight. *National Sponge Cushion Co. v. Rubber Corp.,* 286 F.2d 731, 735 (9th Cir. 1961) *cert. denied,* 368 U.S. 976, 82 S.Ct. 480, 7 L.Ed.2d 438 (1962).

■ *Graham v. John Deere Co.* requires the trier of fact to make certain factual inquiries concerning the scope and content of the prior art and the differences between the prior art and the patented device. 383 U.S. at 17, 86 S.Ct. at 693–94, 15 L.Ed.2d at 556. The trial court's *Graham* findings are binding on appeal if not clearly erroneous. *Garrett Corp. v. American Safety Flight Systems, Inc.,* 502 F.2d 9, 14 (5th Cir. 1974); *see Halliburton Co. v. Dow Chemical Co.,* 514 F.2d 377, 379 (10th Cir. 1975). Here the court examined the 89 prior art references mentioned above, studied a number of exhibits, including two Triumph automobiles, and took expert testimony. Its findings evidence a clear understanding of the various mechanical systems considered, and it was correct in holding the invention was unobvious in light of the prior art.

■ The trial court also considered a number of circumstantial factors which properly provide additional support for its conclusion that the invention was not obvious. *Graham v. John Deere Co., supra,* 383 U.S. at 17–18, 86 S.Ct. at 693–94, 15 L.Ed.2d at 556–57; *Schroeder v. Owens-Corning Fiberglas Corp.,* 514 F.2d 901, 904 (9th Cir. 1975); *Hayes Spray Gun Co. v. E. C. Brown Co., supra,* 291 F.2d at 322. The court found that the invention solved a serious and stubborn problem in the automotive field which had long remained unresolved despite "the vast research and development effort which has been continually conducted over the past fifty years" by, among others, the "leaders in the automotive industry." *See Reeves Instrument Corp. v. Beckman Instruments, Inc., supra,* 444 F.2d at 272 & n. 9. The court further found that "trade recognition of the Avrea invention was prompt, widespread and uniformly favorable." *See AMAX Fly Ash Corp. v. United States,* 514 F.2d 1041, 1045 (Ct.Cl.1975). Trade acceptance consisted not only of laudatory articles in automotive publications, but also in marketing of the system by automobile manufacturers, other large firms, and its use by the United States government.[11] It is true that commercial

---

11. Tests were conducted over several months by the Department of the Army. The trial court found that the federal government recommended the system for government vehicles, and required its use on all air-conditioned vehicles.

success may be attributable to factors other than the novelty of the invention and is therefore not conclusive evidence of unobviousness. *See Jungersen v. Ostby & Barton Co.,* 335 U.S. 560, 567–68, 69 S.Ct. 269, 272–73, 93 L.Ed. 235, 240–41 (1949); *Hamlow v. Scientific Glass Apparatus Corp.,* 421 F.2d 173 (9th Cir. 1970). However, it is a factor that may properly be given weight in resolving this issue. *Application of Felton,* 484 F.2d 495, 500–01 (C.C.P.A.1973).

The trial court did not err in holding the Avrea patent to be valid and therefore giving it the protection due intellectual property. Moreover, the court's determination that no fraud was exercised on the patent office in obtaining the subject patent is supported by the evidence, and is hereby affirmed. *See Schnadig Corp. v. Gaines Manufacturing Co., supra,* 494 F.2d at 392.

Since no increased damages or attorneys' fees have yet been assessed pursuant to the trial court's ruling that this is an exceptional case, we do not pass on the question of whether such awards would be proper under 35 U.S.C. §§ 284–85. Moreover, in view of our decision that the patent here in question is valid and infringed, and consistent with our limited jurisdiction under § 1292(a)(4), we do not review on this appeal the district court's holdings pertaining to unfair competition, for these matters may become moot by reason of the district court's determination as to damages for infringement in the accounting phase of this trial.

The district court's rulings that the patent is valid and was infringed are affirmed. The case is remanded for further proceedings.