605 F.2d 469
 203 U.S.P.Q. 807, 1979-2 Trade Cases 62,909
 SPEED SHORE CORPORATION, Plaintiff-Appellee,
v.
John DENDA d/b/a Denda Equipment and Supply Company, and
Stemar Equipment and Supply Company,
Defendants-Appellants.
SPEED SHORE CORPORATION, Plaintiff-Appellee,
v.
WOUDENBERG ENTERPRISES, INC., d/b/a Star-Lite Barricade and
Sign Company, Defendants-Appellants.
 Nos. 77-3487, 78-1607.
 United States Court of Appeals,
Ninth Circuit.
 Oct. 1, 1979.
 
 John A. Propstra, Phoeniz, Ariz., Ronald W. Reagin, Reagin & Braunstein, Robert Fraser, Fraser & Bogucki, Los Angeles, Cal., for defendants-appellants.
 B. R. Pravel, Pravel, Wilson & Gambrell, Lester L. Hewitt, Houston, Tex., for plaintiff-appellee.
 Appeals from the United States District Court for the Central District of California, and the United States District Court for the District of Arizona.
 Before CHOY, ANDERSON and HUG, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 Speed Shore Corporation brought two separate actions one in California and one in Arizona for infringement of the Brunton patent.[1] In both actions, the defendants admitted infringement if the patent was determined to be valid and not misused. In addition, the parties in each action agreed that whichever one of the cases was tried first would determine the liability in the other. On July 11, 1977, the Honorable William P. Gray, District Judge for the Central District of California, ruled that the Brunton patent was valid, infringed, and not misused. A corresponding judgment was then entered in the Arizona case. Timely notices of appeal have been filed by the defendants in both cases, and we have jurisdiction under 28 U.S.C. § 1292. For the purpose of this appeal, the two cases have been consolidated.
 
 
 2
 On appeal the defendants contend that the district court's findings of validity and non-misuse are incorrect. They argue that: (1) the Brunton patent is invalid under 35 U.S.C. § 103 as being obvious to a person of ordinary skill in the art; (2) the Brunton patent is invalid under 35 U.S.C. § 112 because the claims of the patent do not adequately claim the subject matter of the invention, or because the specification does not contain a written description of the invention; and (3) the Brunton patent, if valid, is unenforceable because of misuse.
 
 
 3
 For the reasons given below, we find the defendants' arguments meritless and we affirm.
 
 OBVIOUSNESS
 
 4
 The defendants argue that the Brunton patent is invalid for obviousness under 35 U.S.C. § 103.[2] In order for the defendants to succeed on this argument, they must overcome the statutory presumption that a patent is valid by clear and convincing proof, Santa Fe-Pomeroy, Inc. v. P & Z Co., 569 F.2d 1084, 1091 (9th Cir. 1978), a presumption which is based upon the expertise of the Patent Office.[3] Moreover, this presumption is further strengthened on appeal where, as here, the trial court conducted an independent examination of the pertinent prior art and concluded that the patent was validly issued. Saf-Gard Products, Inc. v. Service Parts, Inc., 532 F.2d 1266, 1271 (9th Cir. 1976). It is with this heavy burden that the defendants argue the issue of obviousness before this court, a burden which we find they have failed to meet.
 
 
 5
 The trial court made the factual inquiries for determining non-obviousness required by Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 693-694, 15 L.Ed.2d 545, 556 (1966).[4] Neither party has contested these findings, and they are binding on appeal unless shown to be clearly erroneous. Saf-Gard Products, Inc. v. Service Parts, Inc., supra, 532 F.2d at 1272.
 
 
 6
 The ultimate question of patent validity under section 103, however, remains one of law. Astro Music, Inc. v. Eastham, 564 F.2d 1236, 1237 (9th Cir. 1977); Satco, Inc. v. Transequip, Inc., 594 F.2d 1318, 1322 (9th Cir. 1979). Combination patents are subject to rigid scrutiny and must produce an unusual or surprising result. Photo Electronics Corp. v. England,581 F.2d 772, 775 (9th Cir. 1978). This court, in Reeves Instrument Corp. v. Beckman Instruments, Inc., 444 F.2d 263, 271 (9th Cir. 1971), stated that " such determination can be made only by an analysis of the problem allegedly solved by the invention and the efforts of others to arrive at a satisfactory solution." See also: Santa Fe-Pomeroy, Inc. v. P & Z Co., supra, 569 F.2d at 1096. And, in Graham v. John Deere Co., supra, 383 U.S. at 17-18, 86 S.Ct. 684, the Supreme Court made it clear that courts may properly infer non-obviousness from evidence of long felt but unsolved needs, failures of others, and subsequent success and acceptance.
 
 
 7
 Applying these principles to the present case, we find that the trial court's conclusion that the Brunton patent is valid and non-obvious within the meaning of 35 U.S.C. § 103 is supported by ample evidence.[5]
 
 
 8
 The arguments made by the defendants, on the other hand, are unpersuasive, and fall far short of establishing invalidity by clear and convincing proof.
 
 
 9
 The defendants confuse the issue by choosing among elements in various other patents and arguing the obviousness of combining these elements to produce the Brunton shoring device. This court, in Santa Fe-Pomeroy, Inc. v. P & Z Co., supra, 569 F.2d at 1094, rejected such an argument, stating, "a finding which . . . picks out one element in one prior patent and another element in another prior patent as a demonstration of anticipation, is manifestly insufficient to overcome the presumption arising from the issuance of the patent . . . ."
 
 
 10
 Also, the defendants' argument that mechanical engineering students would be able to analyze the Brunton shoring device is irrelevant. This court, in Saf-Gard Products, Inc. v. Service Parts, Inc., supra, 532 F.2d at 1272, stated: "(t)his court has made it clear, moreover, that an invention will not be denied a patent because it embodies a solution which seems simple and obvious with the benefit of hindsight." Thus, even a minor change may produce a patentable invention, where the result could not have been predicted beforehand by one skilled in the art.
 
 
 11
 We have considered the other arguments raised by the defendants and find them to be without merit.[6] We therefore affirm the district court's determination on the issue of obviousness.
 
 35 U.S.C. § 112
 
 12
 The defendants claim that the offset pivot pins were not recited in any of the Brunton patent claims.[7] They argue that the position of the pins in the Brunton patent has therefore not been sufficiently claimed within the meaning of 35 U.S.C. § 112.[8] We find this argument to be without merit.
 
 
 13
 The interpretation of patent claims calls for more than application of a rigid literalism. This court, in Photo Electronics v. England, supra, 581 F.2d at 776, stated that:
 
 
 14
 " '(A)ll parts of the writing, and every word in it, will, if possible, be given effect,' so in construing a patent, the entire instrument, including the drawings and specifications, should be considered. (quoting 4 Deller's Walker on Patents § 225 at 67 (2d ed. 1965))."
 
 
 15
 Reading the claims of the Brunton patent in relation to its drawings and specifications, we find that they are sufficient to claim the offset position of the pivot pins.
 
 
 16
 The defendants further argue that the specifications of the Brunton patent do not contain a written description of the invention as required by 35 U.S.C. § 112.[9] This court, however, in Hensley Equipment Co. v. Esco Corp., 375 F.2d 432, 435 (9th Cir. 1967), held:
 
 
 17
 "Claim 8, standing alone, does not substantiate the trial court's view that the spike portion is to be heavy as compared to the other walls of the Baer wear point. Nor does the specification say anything regarding the heaviness of the spike portion. However, since the patent drawings show the upper spike portion to be relatively heavier than the bottom portion of the Baer wear point, we think the trial court was justified in construing the quoted language of claim 8 as referring to the weight of the upper spike portion in comparison to the weight of the other walls of the claim 8 wear point." (emphasis added)
 
 
 18
 Therefore, this court has held that the absence of a description in the specification is not, by itself, fatal to the patentability of an invention. As a result, the defendants' argument fails.
 
 MISUSE
 
 19
 The alleged misuse arises out of a settlement agreement which was entered into by Mr. Plank, president of Speed Shore, and Mr. Rudie, one of Speed Shore's distributors. Plank had discovered that Rudie was manufacturing machined aluminum parts to make the Brunton shoring device. When confronted by Plank, Rudie admitted such manufacture and the parties negotiated a settlement agreement which the defendants now contend is a misuse.[10]
 
 
 20
 It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation. Williams v. First National Bank, 216 U.S. 582, 30 S.Ct. 441, 54 L.Ed. 625 (1910). The defendants seem to argue, however, that the equitable doctrine of patent misuse prevails over the policy of favoring the settlement of disputes.[11] In this case we disagree.
 
 
 21
 On review of the record, we find that it fails to support the contention that Speed Shore's conduct amounted to an unreasonable restraint of trade. Moreover, the defendants have made no showing that Speed Shore had any intent to use its patent as a tool to extend its property rights beyond the claims of the Brunton patent. Nor have the defendants directed us to any case that extends the doctrine of inequitable conduct so far as to impose strict liability. We feel that to allow a subversion of the deeply-instilled policy of settlement of disputes by applying the doctrine of inequitable conduct, in the manner contended for by the defendants, would have the effect of stripping good-faith settlements of any meaning. We do not believe that the doctrine of inequitable conduct was intended to extend so far.
 
 CONCLUSION
 
 22
 We agree with the district court that the Brunton patent is valid, infringed, and was not misused by Speed Shore. We AFFIRM.
 
 
 
 [1]
 Speed Shore Corporation is the owner of the Brunton patent, U.S. Patent No. 3,224,201. The Brunton patent is a combination patent for a hydraulic shoring device, a device used for supporting the walls of a subterranean excavation
 
 
 [2]
 35 U.S.C. § 103 provides:
 "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which (the) said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."
 
 
 [3]
 We do not believe that the failure to consider the Conlan patents or the D'Arca patent by the patent examiner in any way destroys this presumption. We find that the Conlan patents and the D'Arca patent are equivalent to the cited art. This court, in Saf-Gard Products, Inc. v. Service Parts, Inc., 532 F.2d 1266, 1271 (9th Cir. 1976) stated that " '(a)lleged art that is cumulative to cited art does not weaken or destroy the presumption of validity. Schnadig v. Gaines Manufacturing Co., 494 F.2d 383, 391 (6th Cir. 1974).' "
 
 
 [4]
 The three factual inquiries are:
 (a) scope and content of the prior art;
 (b) differences between the prior art and the claims in suit; and
 (c) the level of skill in the pertinent art.
 
 
 [5]
 We believe that the following evidence clearly supports the trial court's decision:
 (1) There was expert testimony from a mechanical engineer who was experienced in the field of underground installation of pipelines, that the Brunton patent claims were non-obvious.
 (2) Problems relating to the shoring of the sides of ditches or trenches date back to the turn of the century when the first attempts to provide a solution to these problems were made. Yet, despite the fact that all of the elements of the Brunton patent were known, no one before Brunton had seen fit to combine them in the manner he did.
 (3) When Brunton first proposed his invention to Sigma Engineering they refused to adopt it. Instead, they continued using the Saf-T-Jax device of the Bennett patent. Within a few years, however, the Brunton device had completely displaced the Saf-T-Jax, and is now being used by Sigma Engineering.
 (4) The Brunton shoring device has experienced commercial success since 1960. (The Brunton patent was issued in 1959). The defendants point out in their brief that the Brunton Corporation went bankrupt in 1970. The defendants do not, however, give the reason why the corporation went bankrupt. The reason seems to be, as Speed Shore points out in its brief, because the bankruptcy was the failure of other business interests and not the failure of the Brunton shoring device.
 
 
 [6]
 The defendants did assert the "file wrapper estoppel" argument. Under this doctrine, an applicant who has limited or modified a claim in order to avoid its rejection by the Patent Office may not later expand his claim by including the excluded matter, or its equivalents, or by omitting the limitations. The district court found, however, that the amendments to the claims during the prosecution of the Brunton patent were "not for the purpose of limiting the claims as compared to the prior claims presented in the application, but were for the purpose of clarifying (the claims)." We cannot say that such a finding was clearly erroneous
 
 
 [7]
 The claims in the Brunton patent set out, in slightly different wording, that "one upper end" of the first force transfer block is pivotally mounted, and "one lower end" of the second force transfer block is pivotally mounted
 
 
 [8]
 The second paragraph of 35 U.S.C. § 112 provides:
 "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."
 
 
 [9]
 The first paragraph of 35 U.S.C. § 112 provides:
 "The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."
 
 
 [10]
 The paragraph of the settlement agreement charged to be a misuse reads as follows:
 "I agree to refrain from making or buying any mechanical parts for Speed Shore Corp.'s manufactured items (at the present time steel parts excepted) so long as I am associated with the Speed Shore Corp. in any manner, unless specific permission is given in writing from Speed Shore Corp."
 
 
 [11]
 The doctrine of patent misuse as set forth in Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 491, 62 S.Ct. 402, 404-405, 86 L.Ed. 363, 365-366 (1941), is as follows:
 "A patent operates to create and grant to the patentee an exclusive right to make, use and vend the particular device described and claimed in the patent. But a patent affords no immunity for a monopoly not within the grant (citations omitted), and the use of it to suppress competition in the sale of an unpatented article may deprive the patentee of the aid of a court of equity to restrain an alleged infringement by one who is a competitor . . . It is a principle of general application that courts, and especially courts of equity, may appropriately withhold their aid where the plaintiff is using the right asserted contrary to the public interest."