**MANUFACTURING RESEARCH CORPORATION, a Florida Corporation and Electrovision, Inc., a Florida Corporation, Plaintiffs-Appellees,**

v.

**GRAYBAR ELECTRIC COMPANY, INC., a New York Corporation, Defendant-Appellant.**

**No. 80–5333.**

United States Court of Appeals, Eleventh Circuit.

July 9, 1982.

Leydig, Voit, Osann, Mayer & Holt, Edward W. Osann, Jr., H. Michael Hartmann, Chicago, Ill., Maguire, Voorhis & Wells, James E. Slater, Orlando, Fla., for defendant-appellant.

Duckworth, Hobby, Allen & Pettis, Herbert L. Allen, Orlando, Fla., for plaintiffs-appellees.

Before FAY, VANCE and ARNOLD [*], Circuit Judges.

VANCE, Circuit Judge:

This appeal involves the validity of three patents held by plaintiffs for manual and hydraulic cable benders. After a jury trial, the district court held the three patents valid and held that defendant had infringed them by manufacturing and marketing two cable benders, one manually operated and one hydraulically operated. We reverse and remand for further proceedings.

On October 19, 1971 the United States Patent Office issued patent 3,613,430 (the '430 patent) to Silas R. Crees based on an application filed July 25, 1969. This patent was for a hydraulically powered cable bender designed for use within the close confines of electrical transformer boxes. Crees subsequently applied for a patent for a manually operated cable bender. The Patent Office rejected his initial application

dated January 17, 1974 because some of the application's claims were vague and some were anticipated by prior patent art.[1] Crees amended the application and the Patent Office issued to him patent 3,888,101 (the '101 patent) on June 10, 1975. Before issuing the '101 patent, however, the Patent Office instructed Crees to divide the amended application and seek two separate patents.[2] On August 31, 1976 Crees filed for a patent for another hydraulic cable bender based upon the division of the '101 patent. He received patent 4,052,879 (the '879 patent) on October 11, 1977. Crees assigned the three patents to plaintiff Manufacturing Research Corporation (MRC), which manufactured and marketed two different tools, a manual cable bender which was the commercial embodiment of the '101 patent and a hydraulic cable bender embodying the '430 patent.[3]

Greenlee Tool Company has marketed for several years two devices that are remarkably similar to the MRC manual and hydraulic cable benders. One of Greenlee's largest distributors is defendant Graybar Electric Company, which has marketed Greenlee's manual bender (the 796 Model) and hydraulic bender (the 800 Model) throughout central Florida. In 1977 plaintiffs brought this

---

[*] Honorable Richard S. Arnold, U. S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. See 35 U.S.C. § 112.

2. See 35 U.S.C. § 121. Section 121 provides:
 If two or more independent and distinct inventions are claimed in one application, the Commissioner may require the application to be restricted to one of the inventions. If the other invention is made the subject of a divisional application which complies with the requirement of section 120 of this title it shall be entitled to the benefit of the filing date of the original application. A patent issuing on an application with respect to which a requirement for restriction under this section has been made, or on an application filed as a result of such a requirement, shall not be used as a reference either in the Patent Office or in the courts against a divisional application or against the original application or any patent issued on either of them, if the divi-

sional application is filed before the issuance of the patent on the other application. If a divisional application is directed solely to subject matter described and claimed in the original application as filed, the Commissioner may dispense with signing and execution by the inventor. The validity of a patent shall not be questioned for failure of the Commissioner to require the application to be restricted to one invention.
 See also Bates v. Coe, 98 U.S. (8 Otto) 31, 48–49, 25 L.Ed. 68 (1878) (each divisional patent must be regarded as a distinctive invention, "at least for the purpose of pleading the statutory defences to the charge of infringement").

3. Plaintiff Manufacturing Research Corporation (MRC), the assignee of the three patents at issue in this case, is a Florida corporation. The other plaintiff, Electrovision, Inc., also a Florida corporation, holds an exclusive license from MRC under the three patents.

suit[4] against defendant for patent infringement.[5] Plaintiffs claimed that the Greenlee 796 cable bender infringed the '101 patent and that the Greenlee 800 cable bender infringed both the '430 and the '879 patents.[6] At the conclusion of the evidence, the district court instructed the jurors to presume that the three patents were valid unless Graybar had proven their invalidity by clear and convincing evidence. The jury held for plaintiffs on all counts, the district court denied a motion to set aside the ver-

dict or for a new trial, and judgment was entered.[7]

Although the factual issues underlying this appeal are exceedingly complicated, most of the controlling legal principles are firmly established. The 1952 Patent Act, 35 U.S.C. §§ 1–293, establishes the conditions of patentability. First, to be patentable an invention or process must be "new and useful." 35 U.S.C. § 101.[8] An invention must also be novel and not run afoul of certain specific statutory bars to patentability. 35 U.S.C. § 102.[9] The most relevant of these

4. Plaintiff MRC originally sued Greenlee Tool Company in 1975 for patent infringement, unfair competition, and antitrust violations. The district court dismissed the patent claims against Greenlee for want of venue. The case proceeded to trial and a jury held for MRC on the unfair competition claim. That decision is currently on appeal (No. 80–5175).

 MRC and Electrovision subsequently filed this action against Graybar in the United States District Court for the Middle District of Florida. The district court had jurisdiction pursuant to 28 U.S.C. § 1338(a). Venue was properly had in that district. 28 U.S.C. § 1400(b). The district court entered final judgment on the liability issue, so this court has appellate jurisdiction under 28 U.S.C. § 1292(a)(4).

5. See 35 U.S.C. § 271(a). Section 271(a) provides:

 Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.

6. Specifically, plaintiffs alleged that the Greenlee 796 cable bender infringed claims 1, 2, 3, 4, and 7 of the '101 patent. Plaintiffs also alleged that the Greenlee 800 cable bender infringed claims 1, 2, and 11 of the '430 patent and claims 1, 2, and 3 of the '879 patent. The claim is the relevant unit of judicial inquiry in patent cases, but for ease of reference we speak in terms of the entire patent. Our decision, of course, is restricted to the particular claims recited in the complaint.

7. Plaintiffs sought an injunction against further infringement of the three patents, compensatory damages, and attorneys fees. The district court granted a permanent injunction against further infringement and assessed costs against defendant. The district court subsequently stayed the injunction pending this appeal on the condition that defendant post a supersedeas bond in the amount of $100,000 and that de-

fendant account for all sales of both cable benders on a quarterly basis. A final accounting of damages was delayed pending this appeal.

8. 35 U.S.C. § 101 provides:

 Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

9. 35 U.S.C. § 102 provides:

 A person shall be entitled to a patent unless—

 (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

 (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or

 (c) he has abandoned the invention, or

 (d) the invention was first patented or caused to be patented by the applicant or his legal representatives or assigns in a foreign country prior to the date of the application for patent in this country on an application filed more than twelve months before the filing of the application in the United States, or

 (e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or

 (f) he did not himself invent the subject matter sought to be patented, or

 (g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of

statutory bars for our purposes are the bars which preclude patentability if the invention was either "anticipated" by prior art, or "on sale" or "in public use" more than one year prior to the date of the patent application. 35 U.S.C. § 102(a) & (b). *See Hobbs v. United States Atomic Energy Commission*, 451 F.2d 849, 855 (5th Cir. 1971). Finally, an invention must not be an obvious development to a person having ordinary skill in the pertinent field of invention. 35 U.S.C. § 103.[10]

■ Once a patent application survives the scrutiny of the Patent Office, it is presumed to be valid. 35 U.S.C. § 282;[11] *Parker v. Motorola, Inc.*, 524 F.2d 518, 521 (5th Cir. 1975), *cert. denied*, 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 799 (1976). This presumption of validity "is based on the acknowledged experience and expertise of the United States Patent Office and recognition that patent approval is a species of administrative determination supported by evidence." *Ludlow Corp. v. Textile Rubber & Chemical Co.*, 636 F.2d 1057, 1059 (5th Cir. 1981). Thus, in an infringement suit the burden of establishing patent invalidity as a defense rests with the party challenging the patent. This burden generally is an onerous one. The alleged infringer must demonstrate the patent's invalidity by clear and convincing evidence to succeed in this defense. *Kiva Corp. v. Baker Oil Tools, Inc.*, 412 F.2d 546, 553 (5th Cir.), *cert. denied*, 396 U.S. 927, 90 S.Ct. 262, 24 L.Ed.2d 226 (1969); *Speed Shore Corp. v. Denda*, 605 F.2d 469, 471 (9th Cir. 1979); *Astra-Sjuco, A. B. v. United States International Trade Commission*, 629 F.2d 682, 688 (C.C.P.A. 1980).[12] The presumption of validity is severely weakened, however, when pertinent

invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

10. 35 U.S.C. § 103 provides:
A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

11. 35 U.S.C. § 282 provides in relevant part:
A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it.
The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded:
(1) Noninfringement, absence of liability for infringement or unenforceability,
(2) Invalidity of the patent or any claim in suit on any ground specified in part II of this title as a condition for patentability ....

12. We are bound by the decisions of the former fifth circuit that were issued before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). As to the proper standard of proof needed to invalidate a patent, however, the decisions of the former fifth circuit "are in a morass of conflict." *Bird Provision Co. v. Owens Country Sausage, Inc.*, 568 F.2d 369, 373 (5th Cir. 1978), *quoted in Ludlow Corp. v. Textile Rubber & Chem. Co.*, 636 F.2d 1057, 1059 (5th Cir. 1981). Some panels of the court required proof of invalidity beyond a reasonable doubt, while some panels required clear and convincing evidence of invalidity. *Compare Zachos v. Sherwin-Williams Co.*, 177 F.2d 762, 763 (5th Cir. 1949) (beyond a reasonable doubt) *with Kiva Corp. v. Baker Oil Tools, Inc.*, 412 F.2d 546, 553 (5th Cir.), *cert. denied*, 396 U.S. 927, 90 S.Ct. 262, 24 L.Ed.2d 226 (1969) (clear and convincing evidence) *and Hobbs v. United States Atomic Energy Comm'n*, 451 F.2d 849, 856 (5th Cir. 1971) ("quantum of proof ... greater than a mere preponderance of the evidence"). When faced with this kind of conflict, "we ordinarily reject the precedent that is inconsistent with either Supreme Court cases or the weight of authority within the circuit." *United States v. Hobson*, 672 F.2d 825, 827 (11th Cir. 1982). The Supreme Court has not dealt with this issue, although it has noted the discrepancies among the cases. *See Radio Corp. v. Radio Eng'r Labs., Inc.*, 293 U.S. 1, 8, 55 S.Ct. 928, 931, 79 L.Ed. 163 (1934). The weight of authority in the former fifth circuit, however, supports application of the clear and convincing standard of proof. Additionally, the public interest in supporting invention in society, which is the underpinning of the presumption of validity and a higher standard of proof than is normal for a civil dispute over money damages, is not so great as to necessitate application of the

prior art was not considered by the Patent Office in its review of patent applications. *Cathodic Protection Service v. American Smelting & Refining Co.*, 594 F.2d 499, 505 (5th Cir.), *cert. denied*, 444 U.S. 965, 100 S.Ct. 453, 62 L.Ed.2d 378 (1979); *Gaddis v. Calgon Corp.*, 506 F.2d 880, 885 (5th Cir. 1975). In those instances, the burden upon the challenging party is lessened, so that he need only introduce a preponderance of the evidence to invalidate a patent. *Futorian Manufacturing Corp. v. Dual Manufacturing & Engineering, Inc.*, 528 F.2d 941, 943 (1st Cir. 1976). *See Beckman Instruments, Inc. v. Chemtronics, Inc.*, 439 F.2d 1369, 1374–75 (5th Cir.) (presumption of validity is seriously weakened, although not entirely dissipated, when pertinent prior art is not before the Patent Office), *cert. denied*, 400 U.S. 956, 91 S.Ct. 353, 27 L.Ed.2d 264 (1970).[13]

■ Finally, the ultimate determination of patent validity is a conclusion of law. *Bird Provision Co. v. Owen's Country Sausage, Inc.*, 568 F.2d 369, 372 (5th Cir. 1978). This conclusion of law, however, turns on several underlying factual inquiries. *Id.* As to these subsidiary factual findings in a patent case, our scope of review is restricted by the "general proposition that jury findings on disputed matters of fact will be upheld by the reviewing court if substantial evidence exists to support them." *Control Components, Inc. v. Valtek, Inc.*, 609 F.2d 763, 767 (5th Cir.) (citing *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc)), *cert. denied*, 449 U.S. 1022, 101 S.Ct. 589, 66 L.Ed.2d 484 (1980).

### The '101 Patent

■ Graybar argues that the district court erred in refusing to set aside the jury verdict finding the '101 patent valid. Graybar contends, *inter alia*, that there was no substantial evidence to support the jury's finding that the patented manual cable bender had not been placed on sale more than one year before the patent application. Specifically, Graybar argues that undisputed evidence demonstrated that in October 1972 Henry B. Durham sold to Greenlee the manual cable bender that allegedly infringes the '101 patent, and that this sale bars the subsequent patent application. We agree with Graybar, for there was no substantial evidence in the record to support the jury's finding that no manual cable bender embodying the principles of the '101 patent had ever been placed on sale prior to January 17, 1973, the statutory bar date for the '101 patent. Indeed, uncontroverted evidence establishes beyond doubt that Henry B. Durham had sold such a device to Greenlee in 1972.

Undisputed documentary and oral evidence indicated that Durham met Frank DeBartola, Greenlee Tool's Southern Regional Sales Manager, at a trade show in Birmingham, Alabama sometime in October 1972. The evidence also shows that Durham privately showed DeBartola a model of a manual cable bender that he had built. On November 9, 1972 Durham signed a written agreement with Greenlee submitting his manual cable bender for consideration, and DeBartola sent the tool to Greenlee's product development division for review. The manager of this division soon notified Durham that Greenlee was enthusiastic about the tool, but that Greenlee had to research ways of manufacturing the tool. Greenlee subsequently reversed the cable bending shoes and modified the size and shape of the shoes before entering into an

---

stringent beyond a reasonable doubt standard. *See generally Santosky v. Kramer,* —— U.S. ——, ——, 102 S.Ct. 1388, 1393–96, 71 L.Ed.2d 599 (1982) (discussing standards for determining proper burden of proof in lawsuit). Accordingly, we adopt the clear and convincing evidence standard as the appropriate burden of proof to place upon the party challenging the validity of a patent.

**13.** *But see Tveter v. A B Turn-O-Matic*, 633 F.2d 831, 833 (9th Cir. 1980) (failure to cite relevant prior art to Patent Office overturns presumption of validity and shifts burden of proof to patent holder to demonstrate validity), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1983, 68 L.Ed.2d 300 (1981).

exclusive licensing agreement with Durham on April 16, 1973.

■■■■ These actions constituted the placement on sale of a cable bender that embodies the concepts of the '101 patent application. The statutory on sale bar applies when the invention that is the subject of a patent application is merely offered for sale; there is no requirement that a sale be consummated before the statutory bar attaches. *Arbrook, Inc. v. American Hospital Supply Corp.*, 645 F.2d 273, 278 (5th Cir. 1981); *Application of Theis*, 610 F.2d 786, 791 (C.C.P.A.1979). Further, a single sale or offer is enough to bar patentability. *In re Yarn Processing Patent Validity Litigation*, 498 F.2d 271, 277 (5th Cir.), *cert. denied*, 419 U.S. 1057, 95 S.Ct. 640, 42 L.Ed.2d 654 (1974).[14] In this case, Durham presented Greenlee with a functional tool that embodied the tool claimed in the subsequent '101 patent application a full fourteen months before the '101 patent application was filed. It is of no consequence that the actual sale was not completed until the licensing agreement was signed in April 1973. The offer for sale alone operates to preclude patentability of the invention claimed in the '101 patent.

■■■■ Plaintiffs contend that the negotiations between Durham and Greenlee were secret and therefore could not start the statutory time clock running. This contention is without merit, for it is well established that any sale or offer, whether public or private, is enough to implicate the statutory bar. *Hobbs v. United States Atomic Energy Commission*, 451 F.2d at 860; *Piet v. United States*, 176 F.Supp. 576, 584 (S.D. Cal.1959), *aff'd per curiam*, 283 F.2d 693 (9th Cir. 1960). Plaintiffs also contend that Durham sold his idea to Greenlee only for experimental purposes and that the experimental sale exception to the on sale bar applies. We disagree. For this exception to apply the party invoking the exception must prove that the seller intended the product to be used primarily for experimentation rather than for commercial exploitation. *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 290–91 (5th Cir. 1978); *In re Yarn Processing Patent Validity Litigation*, 498 F.2d at 286.[15] There is virtually no evidence in the record, however, to support plaintiffs' invocation of the experimental sale exception. The November 9 agreement was an unrestricted offer of Durham's tool for review and purchase. The agreement provided that Greenlee had no obligation to retain the tool in confidence, something no inventor still experimenting with his device would be likely to allow. *See Ajem Laboratories, Inc. v. C. M. Ladd Co.*, 424 F.2d 1124, 1126 (6th Cir.), *cert. denied*, 400 U.S. 830, 91 S.Ct. 59, 27 L.Ed.2d 60

---

**14.** *See generally* Note, *New Guidelines for Applying the On Sale Bar to Patentability*, 24 Stan.L.Rev. 730 (1972). Normally, the on sale bar provisions arise in the situation in which the patent applicant has sought to extend his monopoly over the invention that is the subject of the patent by applying for a patent well after he has begun to exploit it commercially. The on sale bar to patentability, however, applies with equal force to the situation in which someone other than the patent holder sold the invention more than one year before the date of the patent application. *CTS Corp. v. Piher Intern. Corp.*, 527 F.2d 95, 102 (7th Cir. 1975), *cert. denied*, 424 U.S. 978, 96 S.Ct. 1485, 47 L.Ed.2d 748 (1976).

The trial court correctly instructed the jury that the defendant was required to prove that the device was sold one year prior to the application by clear and convincing evidence. *Manufacturers Sys., Inc. v. ADM Indus., Inc.*, 615

F.2d 741, 743 (7th Cir. 1979). *See Bird Provision Co. v. Owens Country Sausage, Inc.*, 568 F.2d 369, 372–73 (5th Cir. 1978).

**15.** *See also City of Elizabeth v. American Nicholson Pavement Co.*, 97 U.S. (7 Otto) 126, 133–37, 24 L.Ed. 1000 (1878) (discussing experimental use exception to the on sale bar to patentability).

After the defendant proves that the patented device was on sale one year prior to the filing of the patent application, the burden of proof shifts to the plaintiff to show that the sale was primarily for experimentation. *In re Yarn Processing Patent Litigation*, 498 F.2d 271, 286 (5th Cir.), *cert. denied*, 419 U.S. 1057, 95 S.Ct. 640, 42 L.Ed.2d 654 (1974); *FMC Corp. v. F. E. Myers & Bro.*, 384 F.2d 4, 10 (6th Cir. 1967), *cert. denied*, 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968).

(1970); *Piet v. United States*, 176 F.Supp. at 582. Further, the device was complete to the extent that it could be commercially exploited by the purchaser without significant further experimentation. *Hall v. Macneale*, 107 U.S. (17 Otto) 90, 97, 2 S.Ct. 73, 27 L.Ed. 367 (1883); *Application of Dybel*, 524 F.2d 1393, 1399–1400 (C.C.P.A. 1975). It is of no moment that Greenlee made minor design modifications to facilitate production and to allow for cables of different thicknesses to be bent. A sale is not experimental merely because of subsequent modification. *Hobbs v. United States Atomic Energy Commission*, 451 F.2d at 859; *Mayer v. Mutschler*, 248 F. 911, 915 (2d Cir.), *cert. denied*, 248 U.S. 563, 39 S.Ct. 8, 63 L.Ed. 423 (1918). Where, as here, the invention is complete to such an extent that the purchaser knows how it will operate, it is submitted to the purchaser without reservation, and the party invoking the exception otherwise fails to show that the intended purpose of the sale was primarily experimental, the sale is not experimental and the on sale bar attaches.

### The '430 Patent

Graybar challenges the district court's jury instruction requiring the jury to presume the '430 patent valid unless Graybar proved its invalidity by clear and convincing evidence. Specifically, Graybar contends that it introduced into evidence pertinent prior art that was not before the Patent Office and that this evidence rebutted the presumption of validity. Consequently, Graybar argues, it should only have been required to demonstrate invalidity by a preponderance of the evidence.

As we have stated, the presumption of validity that attaches to an issued patent is seriously eroded when relevant prior art was not before the Patent Office. The question before us is what degree of relevance uncited prior art must have before

the presumption is weakened. Plaintiffs contend that the prior art cited by a patent challenger must be more pertinent than the prior art cited by the patent applicant and the Patent Office before the presumption is weakened. They argue further that the challenger's prior art must be outside the patent classification areas cited in the file wrapper [16] before the reviewing court may conclude that it was not considered by the patent examiner. *See Canaan Products, Inc. v. Edward Don & Co.*, 388 F.2d 540, 544–45 (7th Cir. 1968). Graybar, on the other hand, argues that there is no requirement to weigh the relative pertinence of the cited and uncited prior art, and that the presumption of validity is weakened if the uncited prior art is at all pertinent to a determination of anticipation or obviousness. Additionally, Graybar argues that it is irrelevant whether the challenger's uncited prior art is within the patent classifications cited in the file wrapper.

We agree generally with Graybar that the presumption of validity is eroded if the patent challenger brings forward *any* relevant uncited prior art. No case in this circuit or in the former fifth circuit has held that the reviewing court must undertake to balance differing degrees of relevance in assessing prior art and we decline to do so now. Given the extraordinary degree of candor required of a patent applicant, *see Beckman Instruments, Inc. v. Chemtronics, Inc.*, 439 F.2d at 1378–79, and the anticompetetive effects of a patent, *see Graham v. John Deere Co.*, 383 U.S. 1, 5–6, 86 S.Ct. 684, 687, 15 L.Ed.2d 545 (1966), it is incumbent upon us to apply a strict rule on this issue. Otherwise, a patent applicant would be able to reap the benefits of the presumption of validity without necessarily undergoing the full scrutiny of the Patent Office, when it is that full expert scrutiny that is the reason for the presumption in the first place. Thus, we hold that the

---

**16.** The file wrapper is the Patent Office file containing all documents, communications between the patent applicant and the Patent Office, and actions taken by the Patent Office in regard to the patent application.

"statutory presumption of validity does not apply to prior art not cited to the Patent Office, and even one prior art reference not cited to the examiner overcomes the presumption." *Turzillo v. P & Z Mergentime*, 532 F.2d 1393, 1399 (D.C. Cir.), *cert. denied*, 429 U.S. 897, 97 S.Ct. 260, 50 L.Ed.2d 181 (1976) (footnotes omitted). *See also American Seating Co. v. Southeastern Metals Co.*, 412 F.2d 756, 760 (5th Cir. 1969) (presumption of validity weakened if Patent Office did not have all relevant prior art before it). Our only caveat to this stern rule is that cumulative prior art references by a challenger will not weaken the presumption of validity. *Saf-Gard Products, Inc. v. Service Parts, Inc.*, 532 F.2d 1266, 1271 (9th Cir.), *cert. denied*, 429 U.S. 896, 97 S.Ct. 258, 50 L.Ed.2d 179 (1976); *Schnadig Corp. v. Gaines Manufacturing Co.*, 494 F.2d 383, 391 (6th Cir. 1974).

■ We also reject plaintiffs' contention that a reference in the file wrapper to a patent classification area compels the inference that the patent examiner considered and rejected all prior art in that classification. There simply are too many patents within each patent classification area to assume that a patent examiner will consider carefully every patent within a given classification. As the plaintiffs' own expert witness testified, it is probable that an examiner will sometimes miss highly pertinent prior art in a patent search. Indeed, this case provides such an example. In a patent search on the '101 patent, the examiner failed to turn up Durham's prior patent for an identical manual cable bender despite

having searched the relevant patent classification. In light of the potential for error in a patent search, we refuse to attach much significance to a mere reference in the file wrapper to specific patent classifications.[17]

■ In this case, Graybar introduced into evidence relevant prior art that was not cited by either the patent applicant or the examiner.[18] We have carefully studied these prior art references, as well as those cited in the '430 patent application, and we conclude that they are quite probative of the issues of anticipation and obviousness and are not cumulative. We therefore hold that the district court erred in instructing the jury to apply a clear and convincing evidence standard to the defense of invalidity. Graybar is only obligated to show invalidity by a preponderance of the evidence.

■ Normally at this point we would apply the correct legal standard to the evidence adduced at trial to determine whether the '430 patent is valid. *See Continental Oil Co. v. Cole*, 634 F.2d 188, 191 (5th Cir.), *cert. denied*, 454 U.S. 830, 102 S.Ct. 124, 70 L.Ed.2d 106 (1981). Unfortunately, we are unable to determine whether the '430 patent is obvious in light of prior art. Although the question of obviousness is a legal issue, it turns upon an assessment of certain predicate factual findings. *Graham v. John Deere Co.*, 383 U.S. at 17–18, 86 S.Ct. at 693. The district court here instructed the jury to evaluate the '430 patent in light of the *Graham* factors and an incorrect burden of proof.[19] Consequently,

---

**17.** Of course, if the file wrapper discloses that the patent officer examined a particular patent, as opposed to a patent classification area, the presumption of validity attaches with full force.

**18.** The '430 patent application cited the following references to the Patent Office:

| | |
|---|---|
| Schall | 3,336,779 |
| Holsclaw | 2,892,479 |
| Weber et al. | 2,852,064 |
| Henry et al. | 1,816,218 |
| Moore et al. | 1,349,219 |

At trial, defendant introduced three uncited prior art references and an unpatented tool that had been on the market for several years:

| | | |
|---|---|---|
| Kuehlman | 2,754,880 | |
| Hilmor | 687,777 | (Brit.) |
| Chamberlain | 659,453 | (Brit.) |
| Enerpac EMT Bender. | | |

**19.** The defendant also alleges that the district court committed reversible error in leaving the obviousness issue, indisputably a question of law, to the jury. This argument has already been rejected by the former fifth circuit. In

we have neither any explicit detailed fact findings nor any valid findings implicit in the verdict and we are unable to apply the *Graham* test of obviousness to this patent. Accordingly, we remand the issue of the validity of the '430 patent to the trial court for a new trial.

### The '879 Patent

Graybar also challenges the jury instruction on the '879 patent. Graybar contends that it presented relevant uncited prior art at trial and that the district court erred in instructing the jury that Graybar had to establish the patent's invalidity by clear and convincing evidence.

We agree with appellant that the district court incorrectly instructed the jury. As we have already stated, the presumption of patent validity is seriously undermined when a patent challenger produces relevant and noncumulative prior art that was not cited to or by the patent examiner. In this case, the '879 patent application failed to cite two extant patents, as well as a hydraulic thinwall bending device that had been on the market for several years. This prior art was clearly pertinent to a determination whether the '879 patent should issue and was not cumulative.[20] One patent in particular, the Simonsen 2,382,266 patent, was especially pertinent, for it appears to operate on a similar principle as the '879 patent. The Simonsen patent involves the application of direct hydraulic pressure upon a cable bending knuckle to bend cable that was parallel to the entire holding apparatus prior to the beginning of the bending process. Because the patent application failed to disclose this prior art, we hold that the presumption of validity was weakened and the district court should have instructed the jury to determine the defense of invalidity by a preponderance of the evidence standard.

Again, we cannot determine on appeal whether the '879 patent was an obvious development to a person having ordinary skill in developing construction tools. There were substantial conflicts in the testimony at trial concerning the scope of the prior art as well as the differences among the prior art references and the claims forming the basis of the '879 patent. In light of the erroneous jury instruction and the lack of detailed factual findings that are necessary for a determination of the obviousness or lack of obviousness of the patent, we reverse the judgment of the district court and remand for further proceedings.

---

*Control Components, Inc. v. Valtek, Inc.*, 609 F.2d 763, 767 (5th Cir.), *cert. denied*, 449 U.S. 1022, 101 S.Ct. 589, 66 L.Ed.2d 484 (1980), the former fifth circuit held that the district court did not err in submitting the obviousness issue to the jury in light of an instruction to determine obviousness by the factual issues enumerated in *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966). *See also Harrington Mfg. Co. v. Taylor Tobacco Enters.*, 664 F.2d 938, 939 (4th Cir. 1981) (not error to submit to jury ultimate issue of patent validity); *Velo-Bind, Inc. v. Minnesota Mining & Mfg. Co.*, 647 F.2d 965, 971 (9th Cir.) (same conclusion), *cert. denied*, 454 U.S. 1093, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981).

Our conclusion that the district court does not commit reversible error in submitting the question of obviousness to the jury does not indicate that we approve of the practice. Judging on appeal whether an invention is or is not an obvious development is already a difficult task, and the decision to use indefinite special interrogatories with vague jury instructions, as was the case here, only complicates our task. In patent cases, we clearly prefer the use of detailed special interrogatories in jury trials and detailed findings in bench trials. The use of detailed interrogatories will both ease our burden and, more importantly, enable us to defer to the finder of fact as much as possible on subsidiary factual findings.

**20.** The '879 patent application cited the following references to the Patent Office:

| Linquist | 3,924,438 |
| Wigner | 3,861,186 |
| Hagemeyer | 3,813,914 |
| Crees | 3,786,668 |
| Crees | 3,613,430 |
| Crees | 3,584,493 |

At trial, defendant introduced two uncited prior art references and an unpatented tool that had been on the market for several years:

| Holsclaw | 2,892,479 |
| Simonsen | 2,382,266 |
| Enerpac EMT Bender. | |

## Conclusion

We have concluded that the '101 patent is invalid because a substantially identical tool was on sale more than one year prior to the date of the '101 patent application. Consequently, the judgment of infringement must fall as well.

 We have also concluded that the district court incorrectly instructed the jury on the burden of proof needed to invalidate the '430 and '879 patents. Accordingly, we reverse the judgment of the district court and remand for a new trial as to the two patents. In view of this disposition, we do not reach the issue of infringement. The question of obviousness is intimately bound up with the infringement issue, and we think it inadvisable to attempt to sever the questions artificially at this time. *See Dazenko v. James Hunter Machine Co.*, 393 F.2d 287, 291 & n.7 (7th Cir. 1968) (limited remand appropriate only when issues are so separate as to ensure no injustice would result).[21]

**REVERSED AND REMANDED.**

---

**21.** Defendant also raises two objections to evidentiary rulings at trial and one more objection about the jury instructions. Defendant first contends that the district court erred in allowing Silas Crees to testify as an expert witness. The decision whether to allow someone to testify as an expert witness is committed to the sound discretion of the district court. *See Barnes v. General Motors Corp.*, 547 F.2d 275, 278 (5th Cir. 1977). There was no abuse of discretion here. *Cf. Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1374 (5th Cir. 1981) (not error to allow author to testify in copyright infringement suit). Adequate testimony indicated that Crees was qualified to testify as an expert on the development of tools. That Crees had an interest in the outcome of the trial was brought out on cross-examination and it goes to the weight rather than the admissibility of his testimony. Defendants' second evidentiary argument, that the district court erred in allowing the use of the Nobinger deposition to impeach Durham, is without merit.

The district court refused to instruct the jury to give special scrutiny to the patents because they were combination patents. Although we scrutinize combination patents carefully, the burden of proof remains the same whether or not a combination patent is at issue. *See Zero Mfg. Co. v. Mississippi Milk Producers Ass'n*, 358 F.2d 853, 858 (5th Cir.), *cert. denied*, 385 U.S. 841, 87 S.Ct. 93, 17 L.Ed.2d 74 (1966). We do not believe that a jury instruction of the type proposed by appellant would serve any useful purpose. Accordingly, we hold that the district court committed no error in this regard.